[Civ. No. 2555.   Third Appellate District.—July 26, 1923.]

OLGO BOWMAN, Respondent, v. L. C. SEARS, Appellant.

[1] HUSBAND AND WIFE—GIFT OF MONEY—COMPLETED TRANSACTION—
EVIDENCE — FINDING — APPEAL.—Courts of review are precluded
from passing upon evidence except where it falls so short as in
proof of the facts to which it is addressed or is characterized by
such inherent improbability as to make the question of its suffi-
ciency to support the findings of a verdict one of law; and in
this action by the wife of one member of a partnership, as
assignee, to foreclose a mortgage on partnership personal prop-
erty, the evidence was sufficient to justify the conclusion of the
trial court that the money with which plaintiff purchased the note
secured by said mortgage was a gift to her by her husband and
so became and was at the time she purchased said note her sepa-
rate property.

[2] ID.—COMPLETED GIFT OF MONEY—PURCHASE OF NOTE—EVIDENCE.—
Where a husband, after depositing money constituting his separate
property in a bank, authorizes the bank to honor the check of his
wife on his account in said bank for the sum necessary to buy a
certain note held by that bank, and such husband, with the intention
of making a gift of the money to his wife, fills out a blank check
in favor of the bank for the amount of said note and delivers it
to his wife, who thereupon signs her· name thereto and delivers it
to the bank as the purchase price of said note, and the bank
thereupon indorses the note and delivers it, together with the
mortgage securing same, to the wife, the transaction constitutes a
completed gift from the husband to the wife.

[3] ID.—PURCHASE OR PAYMENT OF NOTE—CHARACTER OF ASSIGNMENT
—EVIDENCE.—The transaction having constituted a completed gift
of the money to plaintiff from her husband, the trial court properly
concluded that the purchase of the note by her with that money
did not constitute a payment of the note by her husband, so as to
extinguish the obligation; and the character of .the assignment and
indorsement on the back of the note, which read, "Pay to the
order of" plaintiff "Without recourse," showed that the payee of
the note understood that plaintiff was buying the note, and not
paying it.

[4] ID.—TRANSFER FROM HUSBAND TO WIFE—INTENT.—Under section
158 of the Civil Code, a husband may make a transfer of property
to his wife, whether the same be his own or community, and in

1.   Effect of assignment of mortgage by or with the consent of
mortgagor to third person after payment of debt originally secured,
note, 27 L. R. A. (N. S.) 111.

such case, in the absence of a contrary intent, the transfer will vest in the wife the property conveyed to her as her separate property, and such dealings between a husband and his wife may involve money as well as any other character of property.

[5] ID.—ABSENCE OF FRAUD—EVIDENCE—FINDING.—In such action, the trial court properly found that the transaction culminating in the gift of the money by the husband to the wife, followed by the purchase by her of the note executed by the husband and his copartner, was not sufficient to sustain said copartner's charge of fraud, which was pleaded as a defense to the wife's action to foreclose the mortgage given to secure the payment of such note.

[6] ID.—NOTE SECURED BY PLEDGE—SUIT AGAINST MAKER—WAIVER OF SECURITY.—The payee of a promissory note, secured by a pledge of personal property, may sue the maker of the note without first exhausting the subject of the pledge; and a *bona fide* purchaser of the note possesses the same right.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Irving D. Gibson for Appellant.

C. A. Bliss and White, Miller, Needham & Harber for Respondent.

HART, J.—This appeal was considered and decided by this court on March 8, 1923 (40 Cal. App. Dec. 606). In due time after the handing down of the decision a petition for a rehearing was presented and the same granted. The ground upon which the rehearing was asked was that this court misinterpreted the evidence and the legal effect thereof. The rehearing was granted for the purpose of further considering whether the evidence sufficiently showed that a gift of the money with which the plaintiff made the purported purchase of the mortgage, to foreclose which was and is the purpose of this suit, had been made to the plaintiff by her husband, one of the mortgagors.

The former opinion contained the following statement of the case which, with the elimination therefrom of an inaccuracy as to the manner in which the plaintiff's husband deposited in the bank certain money which he had received

in the form of a draft on a Chicago bank, we hereby adopt as a part of the present opinion:

"This action was for the foreclosure of a chattel mortgage given to secure the payment of a promissory note for the sum of $2,800, executed and delivered by the defendants to the California National Bank of Sacramento.

"For some time prior to the execution of the note and the mortgage in suit, the defendants were copartners, engaged, as the record sufficiently though rather vaguely discloses, in the farming business in the county of Sacramento. The plaintiff is and was at all times mentioned in the pleadings herein the wife of the defendant, L. W. Bowman.

"The note and the mortgage in controversy were executed by the defendants to evidence and secure a partnership obligation to the said bank, the mortgage covering partnership personal property. As the brief of counsel for the appellant states: 'The note sued upon was one of several renewal notes executed from time to time by the defendants, all evidencing the same obligation, except that the indebtedness was originally for the sum of $2,500 only, but which was afterwards increased to the sum of $2,800. At all times the note was secured by a pledge of 28 shares of the capital stock of the Pittsburg Plate Glass Co., belonging to the defendant Bowman.

"The chattel mortgage was not given until the execution of the note in suit. The cashier of the bank testified that the stock in the plate glass company which was pledged as collateral security for the note was of value in excess of the amount evidenced by said note; that it was considered sufficient security and that the bank did not require or demand additional security for the note in the form of a mortgage or otherwise; that it was the defendant L. W. Bowman who suggested and requested the bank to take the chattel mortgage in question.

"The execution of the mortgage and the subsequent payment of the note by the plaintiff and thereupon the assignment of the note and the mortgage to her by the bank came about under these circumstances: It appears that the partnership business was not in a prosperous condition. In fact, all indications pointed to a complete failure of the business enterprise in which the defendants, as copartners, were engaged. The defendant and his wife (the latter plaintiff

herein), having reason to believe that the partnership was on the verge of a complete collapse or failure, and after some consideration of the situation, arrived at the conclusion that, to prevent the entire burden of the partnership obligation to the bank from falling on the shoulders of the defendant L. W. Bowman, or, in other words, to save the latter's stock from being appropriated to the extinguishment of said obligation, conceived the idea of giving to the bank a mortgage, to be jointly executed by the defendants on the partnership personal property. This scheme was carried out, the defendants having, contemporaneously with the execution of the note sued on (which, as seen, was only a renewal note to take the place of a previous note of the firm to the bank, in an increased amount, however), executed the mortgage to foreclose which this action was inaugurated. On the 24th of September, 1918, the bank mailed to the defendant a written notice of the fact that the said note, together with accrued interest, would be due and payable on the 29th day of said month, and therein requested payment of the interest and a partial payment on the principal. On the 25th day of September, 1918, the defendant L. W. Bowman deposited in said bank in his own name and to his separate account, a draft on Chicago for the sum of $2,782.62. This money was, so the plaintiff testified, the separate property of her husband, said L. W. Bowman. At the time the latter so deposited said draft, the plaintiff was with him at the bank. On the same day—that is, the day on which said draft was deposited as indicated—L. W. Bowman filled out a blank check for a sufficient amount to pay the principal sum of and the accrued interest on the note in suit, and the plaintiff signed the check and with it took up the note. Thereupon, in obedience to her demand, the bank assigned to her the note in controversy, indorsing on the back of the instrument the following words: 'Pay to the order of Olgo Bowman. Without recourse. The California National Bank.' The stock in the plate glass company which had been pledged as collateral to secure said note was then turned over to the defendant L. W. Bowman. On the 27th day of September, 1918, the defendant L. W. Bowman went to the bank alone or unaccompanied by the plaintiff, and obtained from the bank a formal assignment of the note and the mortgage to the plaintiff. Up to that time the mortgage had not been ac-

knowledged by either of the defendants or filed for recordation in the office of the county recorder. On the date last named Bowman acknowledged the mortgage and thereupon filed the note and mortgage with the county recorder for recordation.

"The amended complaint is in the usual or characteristic form in actions for the foreclosure of liens. Paragraph 2 thereof refers to the execution of the note and the chattel mortgage, enumerating the articles of personal property covered by the latter and also states that said mortgage was made in good faith and without any design to hinder, delay or defraud creditors, 'and at the same time was duly acknowledged by said mortgagors, and certified, so as to entitle the same to be recorded and the same was thereafter, to wit, on the 27th day of September, 1918, duly recorded,' etc. It is also alleged in said complaint that the note and the mortgage in suit were on the 27th day of September, 1918, for a valuable consideration, by an instrument in writing, assigned to the plaintiff by the said bank. It is further alleged that by the mistake of the person who prepared the written assignment said instrument erroneously referred to the mortgage purporting thus to be assigned as having been executed on the '13th' instead of the '30th' day of August, 1918, which was the date of the execution of the last-mentioned instrument. Besides the prayer for a decree of foreclosure, etc., the plaintiff asked that the assignment be reformed in the particular indicated.

"The answer, apart from the admission of the existence of the indebtedness and the execution of the note sued upon, as alleged in the amended complaint, consists of specific denials, upon information and belief, of all the other material averments of said pleading. With the answer, the appellant filed a cross-complaint substantially alleging that the plaintiff did not at the time said note was paid own or possess, in her separate right, sufficient or any funds with which to purchase said note and that the indorsement and delivery of said note was made by said bank to the plaintiff without any consideration whatever being paid or moving to said bank from said plaintiff, but that the entire consideration for said indorsement and delivery of said note and assignment of said chattel mortgage to her by the bank was paid and furnished by the defendant L. W. Bowman, one of the

makers of said note; that said Bowman has been at all times and is now the true owner of said note and chattel mortgage and also of any and all rights and liabilities thereunder, including said stock deposited as collateral security; that the plaintiff has no actual right, title or interest therein; that the transfer of said note, chattel mortgage and stock was made to plaintiff in fraud of the rights of the defendant Sears and for the purpose of enabling defendant Bowman to escape his liability on said note and to compel the defendant Sears to pay the whole thereof; that said stock, so pledged, etc., was delivered to defendant Bowman, either directly or through the plaintiff and that he (said Bowman) thereafter and prior to the commencement of this action, disposed of said stock and also purported to transfer to the plaintiff certain real estate 'heretofore owned by him and that he personally is now, or pretends to be, insolvent and judgment proof, and that it would, therefore, be impossible for this defendant to collect any judgment which he might obtain against said L. W. Bowman for contribution of one-half of the indebtedness evidenced by said promissory note,' etc.; that said defendant Bowman caused the note and chattel mortgage to be ostensibly assigned and delivered to the plaintiff for the purpose and with the intention of concealing the fact that the consideration for the transfer of said note and mortgage by said bank to the plaintiff was paid to the bank by said Bowman who is 'the true owner and holder of said promissory note, chattel mortgage and of any and all rights and liabilities thereunder,' and the real party in interest as party plaintiff in this action. The cross-complaint further states that the defendant Bowman should be made a cross-defendant, so that the matter of his share of the liability on the note may be fixed and determined and contribution by him to the defendant Sears of said liability be adjudged, thereby avoiding circuity of actions between the defendants. The prayer is for a decree that said Bowman be enjoined as cross-defendant herein; that said chattel mortgage is without consideration and that it be canceled; that the plaintiff holds said note and chattel mortgage as trustee for said defendant Bowman; that the amount of the liability of said defendant Bowman upon said note to this defendant in contribution for his, said Bowman's, share of the indebtedness evidenced by said note, be found and determined and

that the amount so found to be due from said defendant Bowman in contribution be credited as an offset upon the amount, if any, found to be due from this defendant to plaintiff as trustee for said Bowman, etc.

"The answer of the plaintiff to the cross-complaint, besides denying all the material allegations contained in said pleading, except that as to the execution of the mortgage, as above explained, admits 'that as one of the makers of said note said defendant Bowman is liable to defendant Sears in contribution for one-half of the indebtedness evidenced by said note, if and when the same shall have been paid by said defendant Sears, but not otherwise; that defendant Bowman has been at all times and still is ready and willing and able to pay to plaintiff one-half of the amount due from said defendants L. W. Bowman and L. C. Sears and that said plaintiff has been at all times since she acquired said note, and still is, ready and willing to accept from said defendant Sears one-half of the amount due from said defendants Bowman and Sears on said note and to give said defendant Sears, upon the payment by him of the amount so due, a full and complete release and satisfaction of his indebtedness and liability under and by virtue of said note and mortgage, all of which has been and still is well known to defendant Sears.'

"The defendant L. W. Bowman by his answer denies all the material averments of the cross-complaint, with the exception of the allegation as to his liability to defendant Sears in contribution for one-half of the indebtedness evidenced by said note, 'if and when the same shall have been paid by said defendant Sears, but not otherwise.' Said defendant also alleges that he 'has been at all times and still is ready and willing and able to pay to plaintiff one-half of the amount due from said defendants to L. W. Bowman and L. C. Sears.'

"We have thus given an extended statement in substance of the allegations of all the pleadings in the case because the court's findings, except as to one or two propositions of fact, are not specific, referring only in general language to the allegations of the various pleadings as a statement of the facts found, viz.: That each and all of the allegations of plaintiff's amended complaint are true; that defendant Bowman made no denial of said allega-

tions, and that the denials and allegations of the answer of defendant Sears are untrue; that the funds used as a consideration for the assignment mentioned in said paragraph 2 were freely given by the defendant L. W. Bowman to the plaintiff and the same became and were her separate property, and the note and mortgage sued upon were purchased and acquired by her as her separate property and were and are held and owned by her as such; that the denials and averments of the answers of L. W. Bowman and of the plaintiff Olgo Bowman to the cross-complaint of the defendant L. C. Sears are true.

"The judgment decreed the reformation of the written assignment of the chattel mortgage by inserting the word 'thirtieth' in lieu of the word 'thirteenth,' 'where the same appears in said instrument in the reference to the date of the mortgage thereby assigned.' The decree also adjudged that the defendants were indebted to the plaintiff on said promissory note in the sum of $2,519.19; that the personal property described in the mortgage be sold by a commissioner appointed by the court for that purpose at public auction and the proceeds of such sale, after the payment of necessary costs and expenses incurred in the sale of the property, be paid to the plaintiff or her attorneys in satisfaction of the judgment. Judgment for any deficiency shown to exist was ordered to be entered against the defendants for the amount of such deficiency.

"Appellant makes three points upon which he insists that the transaction crystallized in the judgment should be set aside. They are: 1. That the payment of the note on September 25, 1918, operated to extinguish the obligation; 2. That the note having been paid on September 25, 1918, the attempted assignment of September 27, 1918, was ineffectual and inoperative; 3. 'That the entire transaction of the 25th of September, 1918, was for the benefit of the husband, in fraud of this defendant, and the court must treat the situation as though Mrs. Bowman were but a dummy to enable Mr. Bowman to perpetrate the fraud on appellant.' "

The real question deducible from or involved in the points thus separately presented, however, is whether the money with which the note was taken up was a gift to the plaintiff by her husband, the defendant, Bowman, and

this question must, of course, be answered by the determination of the further question whether the finding of the trial court that said money was a gift to the plaintiff is evidentially well-grounded or that the evidence as to the transaction is such as to require this court to declare, as a matter of law, that the transaction did not involve a gift of said money.

The testimony of the cashier of the California National Bank was to the effect that the defendant Bowman maintained a deposit account in said bank in his own name from June 5, 1916; that the account always remained in said Bowman's name, but that at some time before the note was taken up—whether at the time the account was opened or subsequently, is not made clearly to appear by the record—said Bowman authorized the bank to honor the plaintiff's checks on said account, and that the bank thereupon made a record of said authorization by means of a ledger card, the account, however, still remaining in the name of the defendant Bowman. The cashier testified that it was the custom of the bank to pay checks issued by a party other than the depositor on the latter's checking account where he (the depositor) authorized it to be done without changing the account on the ledger from the separate account of the depositor to the joint account of the latter and the party properly authorized by the depositor to draw on said account, in which case, of course, either was at liberty to check on such account. The testimony of the cashier further shows that the Chicago draft, above referred to, for the sum of $2,782.62, was deposited by defendant Bowman in said bank in his name and to his separate account; that, as before stated, on the day on which the Chicago draft was deposited (September 25, 1918), the plaintiff drew on the account in the bank a check for $2,814.15 for the purpose of purchasing the note in controversy. As to the giving of the chattel mortgage, the cashier testified that, at some time prior to the execution of the note in suit as a renewal of the note previously given, the defendant Bowman called at the bank and suggested that a mortgage be given by the defendants on the partnership chattels as security for their indebtedness to the bank; that, while it did not ask for or require additional security, the pledged stock being sufficient, the bank

did not refuse to accept the mortgage; that, on the day on which the note in suit was executed to supersede the previous note, the mortgage having been duly executed by the defendants, or as the law requires as to chattel mortgages (secs. 2955, 2956, 2957, Civ. Code), was delivered to the bank and the latter accepted the same. The cashier further testified as to the matter of assigning the note and mortgage to the plaintiff upon her payment of the note on the twenty-fifth day of September, 1918, as above explained.

The plaintiff testified that she and her husband, before the note in suit fell due, foresaw that failure of the partnership business of the defendants would inevitably occur, and that the result, under the then existing circumstances, would be that the stock of her husband, pledged as security for the note, would be sold to satisfy the partnership obligation; that she and her husband, after consideration of the situation, called on their attorney, who, having been by them put in possession of all the facts, advised them that the stock could be saved by the plaintiff purchasing the note and mortgage; that said attorney advised them that the defendant Bowman could make a gift to plaintiff of sufficient money to purchase the note; that, in pursuance of said advice, the defendant Bowman sent for the money (presumably that represented by the Chicago check) "and arranged so she could draw a check on the account." She further stated that the understanding between her and her husband was that, upon her taking up or purchasing the note, the same and the chattel mortgage were to be her separate property; that the money covered by the Chicago draft or check was the separate property of the defendant L. W. Bowman. The manner in which the money was given to her by her husband and the taking over the note and mortgage by her has been explained. She testified that, after she became the owner of the note, and on October 1, 1918, the defendant Bowman paid the accrued interest thereon, amounting to the sum of $16.34, and that on the twenty-ninth day of November, 1918, he made a payment on the principal of $313.49. (These payments were noted on the back of the note in the handwriting of the plaintiff, and they account for the fact that the judgment is a trifle over $300 less than the face value of the

note sued on.) The plaintiff admitted that the purpose of giving the mortgage to the bank as additional security for the payment of the note was to prevent the appropriation by the bank of the pledged stock to the payment of the note, said stock being, as we have seen, the property of the defendant L. W. Bowman or possibly the community property of the plaintiff and said Bowman; that the purchase of the note by her was a part of the plan to prevent the said stock from being sold to satisfy the note.

The above in substance is all the evidence presented by the plaintiff in support of the theory that the money with which she took up the note and mortgage was a gift to her from her husband. From said evidence the court, believing it, could have made specific findings as follows: That the plaintiff desired to become the owner of the note and mortgage; that she and her husband were advised by their attorney that she could accomplish that result by her husband making her a gift of sufficient money to purchase the obligation; that she and her husband agreed to that plan and to that end he sent for and received certain money, which was his separate property, deposited the same in the bank, and authorized the bank to honor her check on said account for the sum necessary to buy the note; that her husband, being present, with the intention of making a gift of the money to the plaintiff, filled out a blank check in favor of the bank (mortgagee) for the amount of the note, delivered said check to the plaintiff, who thereupon signed her name thereto and delivered it to the bank as the purchase price of the note; that the bank thereupon delivered the note and mortgage to the plaintiff, with the indorsement as indicated above. Upon these facts can this court say as a matter of law that the transaction did not constitute a gift of the money by the husband to the plaintiff? Are we legally authorized to declare that the trial court's interpretation of the transaction as it was exposed to it by the testimony—testimony given by the witnesses in its presence—is erroneous? We do not feel that we are at liberty to answer those questions in the affirmative.

[1] The conclusion that the money with which the plaintiff purchased the note was a gift to her by her husband and so became and was at the time she purchased the

note her separate property was obviously founded mainly upon the testimony of the plaintiff. There is nothing in the character of her testimony or in the record which would justify us in holding that the court, believing her story to be true and so accepting it, erred in concluding therefrom that the money was a gift to her by her husband. From the viewpoint of a court of review, the fact that the motive prompting the plaintiff and the defendant to consummate the transaction under the circumstances as indicated was to save the defendant Bowman from being required alone to bear the liability for the obligation does not militate against the force or probative strength of the testimony of the plaintiff that the money was a gift to her by her husband. Said motive might have been a matter for the trial court to consider in determining the weight or the credit which should be assigned to the testimony of the plaintiff in that particular. Such a consideration, however, is not one by which reviewing courts may be guided in determining whether the testimony is sufficient to support findings upon which a judgment is planted. As is well understood, courts of review are precluded from passing upon evidence except where it falls so short as in proof of the facts to which it is addressed or is characterized by such inherent improbability as to make the question of its sufficiency to support the findings or a verdict one of law. And the fact that the bank was, at the time of the execution of the mortgage, sufficiently secured upon the note, and did not require or demand further security than that which it already had and that the mortgage was given at the request or upon the proposal of the defendant Bowman cannot be treated by us as in derogation of the testimony of the plaintiff that the money she used in purchasing the note was a gift from her husband or of the finding following from said testimony. This matter was also one entirely for the consideration of the trial court in determining the weight and effect of the evidence. The defendant Sears did not testify in the case, and there is, therefore, in the record no explanation from him as to the particular reason actuating him in signing the mortgage, nor is it made to appear that his act in signing the mortgage was not freely and voluntarily done. Hence, it is to be assumed that the giving of the

mortgage was with his entire consent and acquiescence, and that the purpose of giving it was to relieve, at least *pro tanto*, or so far as the proceeds of the sale of the mortgaged chattels would effect that result, the individual stock of the defendant Bowman from bearing the burden of the partnership obligation.

[2] The appellant contends, however, that the transaction, as it was shown by the evidence of which a synoptical statement is given above, does not measure up or square with the requirements essential to the consummation of a completed verbal gift as the same is described by section 1147 of the Civil Code, which thus lays down the essentials of a valid gift: "A verbal gift is not valid, unless the means of obtaining possession and control of the thing are given, nor, if it is capable of delivery, unless there is an actual or symbolical delivery of the thing to the donee."

[3] It is first argued that the transaction, as it was shown by the evidence and as it was found by the court to have been conducted and consummated, cannot be considered in any other light than that of a payment of the note by the defendant Bowman himself, or, in other words, that it was within the rule that, where a promissory note is taken up by a third party with funds furnished by the maker of the note, the legal effect thereof is the extinguishment of the obligation evidenced by the note. (*Porter* v. *Title Guaranty & Surety Co.*, 17 Idaho, 364 [27 L. R. A. (N. S.) 111, 106 Pac. 299, 302]; *Binford* v. *Adams*, 104 Ind. 41 [3 N. E. 753]); that, furthermore, in order to show a purchase of a promissory note, it is essential that there be shown an agreement, express or implied, on the part of the holder to sell, and, on the part of the party paying the money due on the note, to buy. (*Lee* v. *Field*, 9 N. M. 435 [54 Pac. 873, 874]; Daniel on Negotiable Instruments, sec. 1221; *Lancy* v. *Clark*, 64 N. Y. 209 [21 Am. Rep. 604]; *Burr* v. *Smith*, 21 Barb. (N. Y.) 263); that one who voluntarily pays the note of another cannot make himself by such payment the owner of the note without the knowledge and consent of the holder thereof; that "the doctrine of subrogation has no application to payments made by a mere volunteer." (*People's & Drovers' Bank* v. *Craig*, 63 Ohio St. 374 [81 Am. St. Rep. 639, 52 L. R. A.

872, 59 N. E. 102].) These several propositions involve sound legal doctrines, but, if we are correct in the view we take of the transaction as above expounded, they have no application to this case. As to the proposition that to show a purchase of a promissory note it is essential that there be shown an agreement express or implied, on the part of the holder to sell, and on the part of the party paying the money due on the note to buy, it is to be remarked that the character of the assignment indorsed on the back of the note, together with the fact that the plaintiff did take up the note with money given to her as her own separate property, is evidence sufficient to show (and sufficient to support a finding to that effect) that there was an understanding or agreement on the part of the bank to sell the note to the plaintiff and on the part of the latter to buy it. The assignment, it will be noted, reads: "Pay to the order of Olgo Bowman. Without recourse." It is manifest that if the bank had understood that the plaintiff intended to pay the note, or that that was the purpose of both plaintiff and her husband in the transaction, and the bank so understood it, the instrument would have been marked or indorsed as paid and not transferred by assignment to the plaintiff "without recourse."

But it is further argued in effect that, even conceding that the transaction could in any view have been intended to constitute a gift, or, in other words, that the evidence clearly enough shows that the intention of the defendant Bowman was to effect a gift of the money to the plaintiff, yet all that the transaction amounted to was the delivery to the plaintiff, not of the thing itself which was supposed to be the subject of the gift, but of a check, which, as counsel for the appellant well declares, is nothing more than an order by the owner of a deposit in a bank directing the latter to pay the payee a certain sum of money. It is true, as the learned counsel for appellant states, that the depositor of money in a bank is not by reason of such deposit the owner of specific money or funds in such bank, but is a mere creditor owning only a chose in action as against the bank for the amount due him from the latter. It follows, therefore, that the delivery of a check by the depositor to one to whom he desires and intends to make a

gift of the money so deposited, or any portion thereof, does not itself effect the gift—the delivery of the check, in other words, does not itself constitute a delivery of the thing intended to be given. (*Pullen* v. *Placer County Bank*, 138 Cal. 169 [94 Am. St. Rep. 19, 66 Pac. 740, 71 Pac. 83]; *Fidelity Sav. etc. Assn.* v. *Rodgers*, 180 Cal. 683 [182 Pac. 426]; *Arnold* v. *San Ramon Valley Bank*, 184 Cal. 632 [13 A. L. R. 320, 194 Pac. 1012].) And, as the counsel further affirms, to make a valid gift *inter vivos*, "if the thing is not capable of actual delivery, there must be some act equivalent to it. The donor must part not only with the possession, but with the dominion of the property. If the thing given be a chose in action, the law requires an assignment, or some equivalent instrument, and the transfer must be actually executed." (2 Kent's Commentaries, p. 439.) Or, as the rule is stated in *Cook* v. *Lum*, 55 N. J. L. 373 [26 Atl. 803]: "The transfer must be such that, in conjunction with the donative intention, it completely strips the donor of his dominion of the thing given, whether that thing was a tangible chattel or a chose in action." (See *Adams* v. *Merced Stone Co.*, 176 Cal. 415, 418, 419 [178 Pac. 498], in which it is held, adversely to the position of counsel for the respondent in that case, that it is not true that section 1147 of the Civil Code is complied with in every case of a gift of a chose in action "where, at the time the donor makes the gift, he knows that the donee has it within his power to secure possession and control of the thing given, and that in such case no delivery or transmission from the donor to the donee of the means of obtaining possession and control of the subject of the gift is necessary.") It is the settled doctrine, as the appellant here further maintains, "that an order or writing for the payment of money or the delivery of property which does not by its legal effect constitute an assignment, and which is executed as a gift and for no other consideration, will not be upheld or enforced as an equitable assignment." (*Fidelity Sav. etc. Assn.* v. *Rodgers*, 180 Cal. 683, 687 [182 Pac. 426]. See, also, *Pullen* v. *Placer County Bank*, *supra*; *Brokaw* v. *Brokaw*, 41 N. J. Eq. 221 [4 Atl. 66]; 5 Cor. Jur., p. 931.)

The above-stated propositions are, as declared, unassailable. But it is not claimed here that the check which the defendant

Bowman authorized the plaintiff to sign and draw on his separate funds for the purpose of securing the money with which to buy the note itself operated as an equitable assignment or any assignment of the money. The theory of the plaintiff and of the decision of the court was that the transaction involved an executed gift of the money, and that the check merely constituted the means adopted by the defendant to effect a gift of the money to the plaintiff. We do not understand that it is contended that, where a party, with the intention of making a gift to another of money which he has on deposit to his credit in a bank, issues and delivers to the intended donee his check on such bank for the amount he intends so to give, and the donee, before the death of the donor, or before the check has otherwise been revoked or annulled by the latter, presents the check and receives from the bank the money, or has the money credited to his account in the bank, a completed gift has not thus been consummated. No case has been cited, and we feel certain that none can be found, which stands for such a proposition. Indeed, the cases which have been brought to our notice, including some of those cited in the petition for a rehearing of this cause, in effect hold that a gift of money is consummated by the payment of the donor's check to the donee by the bank upon which it is drawn, and that a gift thus effected will stand irrevocable, in the absence of a showing of fraud or mistake or any other cause which might vitiate a contract founded upon a consideration. The contention that, since the plaintiff did not receive actual physical possession of the money itself, there was not and could not be such a delivery thereof as is legally essential to the consummation of a gift, is without merit, so far as this case is concerned. Let it be supposed that in the case of *Pullen* v. *Placer County Bank, supra*, the facts were like these: That the son was indebted to said bank in the sum of $1,000, payment of which was due; that the father desired and intended to make a gift to his son of a sufficient sum to cancel such indebtedness, and with that purpose in view, having previously told his son that he intended to make the gift to him, accompanied the latter to the bank, filled out a check on his funds in said bank for an amount equal to the son's indebtedness, requested his son to sign it, and then

authorized the bank to honor the check; that the son thereupon declared to the bank that he desired that the sum called for by the check should be accepted and stand as in satisfaction of his indebtedness to it, and that the bank accepted the check and canceled the son's indebtedness, returning to him his note marked paid. In such case no one would for a moment doubt that the father had thus effected a gift to the son of the sum of $1,000 or that the legal effect of such transaction was a gift of said sum by the father to the son. There is no distinction in the facts between the supposititious case and the one at bar.

Of course, the fact that the donor and donee here were husband and wife was one which, under the circumstances of this case, called for a scrutinizing examination and consideration of the transaction, and we may assume that the trial court gave the transaction such consideration, since there is an absence of clear ground for holding that the conclusion of that court from the facts and circumstances proved and found is upon its face, or when measured by the proofs, erroneous. As to the fact of the relationship between the plaintiff and the defendant Bowman it was for the trial court to consider it in connection with all the other evidence in determining whether or not the facts proved justified it in concluding, as a matter of law, that the transaction constituted a gift of the money to the plaintiff. "Of course," as was stated in the former opinion filed herein, "it is not disputed that a husband and wife may enter into contracts with each other or with other persons respecting property the same as they might were they unmarried. This proposition is established by section 158 of our Civil Code. [4] Under said section a husband may make a transfer of property to his wife, whether the same be his own or community, and in such case it is well settled that, in the absence of a contrary intent, the transfer will vest in the wife the property conveyed as her separate property. (*Hamilton* v. *Hubbard,* 134 Cal. 603 [65 Pac. 321, 66 Pac. 860]; *Tillaux* v. *Tillaux,* 115 Cal. 672 [47 Pac. 691]; *Ions* v. *Harbison,* 112 Cal. 260 [44 Pac. 572]; *Carter* v. *McQuade,* 83 Cal. 274 [23 Pac. 348]; *Burkett* v. *Burkett,* 78 Cal. 310 [12 Am. St. Rep. 58, 3 L. R. A. 781, 20 Pac. 715]; *Taylor* v. *Opperman,* 79 Cal. 468 [21 Pac. 869].)'' In the instant case, as we have concluded, after a

reconsideration of the record, the money given to the plaintiff was of the separate property of the defendant Bowman, and deposited in the bank to his separate account. It will not be maintained, though, that any dealings between the husband and wife with respect to property, as authorized by the section of the Civil Code named, may not involve money as well as any other character of property. And this leads us to declare that, although the money received by plaintiff was at all times the separate property of her husband until the transaction herein involved occurred (and which, so far as this feature of the transaction is concerned, would seem to furnish a stronger reason for considering the transaction as a gift than if the money had been of the community), we adhere to the conclusion stated in the former opinion herein filed, that this case is, in the facts, substantially the same as the case of *Mack* v. *Mechanics' etc. Bank,* 50 Hun (N. Y.), 477, in which it appears, there was testimony before the trial court tending to show that after the deposit had been made, the depositor went to the bank with his mother and had the deposit changed to their joint names and at a subsequent time made a gift of the deposit to her. The transaction was upheld as a gift. The only difference between the two cases was in the means whereby the gift was effected. In both cases the donor put it in the power of the donee to secure the money, and while, in neither case, the actual, physical possession of the money was received or taken by the donee, the exclusive ownership thereof was vested in the latter and simultaneously, of course, the owner divested of ownership and dominion of the money.

As to the charge of fraud in the transaction on the part of defendant Bowman and plaintiff, made in appellant's cross-complaint, we adopt the following views expressed in the opinion originally filed herein:

[5]  "The appellant wholly failed to sustain the charge of fraud against the defendant Bowman or the plaintiff or both in the transaction. The averments of the cross-complaint as to the charge of fraud are on information and belief, and these the answers of defendant Bowman and the plaintiff in direct and positive language deny. There is no evidence that the defendant Bowman was an insolvent or 'pretended' to be. There is no evidence that by the trans-

action he intended to evade the payment of his just part of the obligation. To the contrary, in his answer it is stated that he was at all times and is now able, ready and willing to pay his part of the note and in the answer of the plaintiff it is declared that she was and is now ready and willing to discharge Sears from any further obligation on the note upon his payment to her of one-half thereof. The fact that plaintiff did not take over the stock pledged to secure the obligation when she bought the note and had it transferred to her is not of itself evidence of any fraudulent design against Sears on the part of defendant Bowman or his wife, the plaintiff. The assignment of the note to her was sufficient in form, and carried with it any and all security which had been given for the payment of the note. (Civ. Code, sec. 2936.) But she had the right to waive the security represented by the stock pledged to secure the note, and this she did, the same having been returned to her husband, the owner thereof, upon her purchase of the note. This waiver, as seen, was due to her desire to save the stock from being sold ·to pay the obligation. But what was there intrinsically wrong about that? Why should she not—why should the defendant Bowman not—consistently with good faith and an honest motive in the transaction, do that which would prevent his separate property from being entirely appropriated to the extinguishment of a partnership obligation? There is no conceivable just reason for saying that the conduct of the plaintiff in pursuing that course was fraudulent or was adopted with a design to wrong the defendant Sears or that by reason of her waiver of the security, so far as the stock was concerned, fraud is to be imputed to the defendant Bowman. And the fact that the plaintiff waived her right to so much of the security as was represented by the pledged stock obviously would not have the effect of precluding her from the right to foreclose the mortgage. [6] Indeed, it is hardly necessary to say that it is a well-established principle that the payee of a promissory note, secured by a pledge of personal property, may sue the maker of the note without first exhausting the subject of the pledge. In this case the bank could have sued the defendants upon the note without resorting to the subject of the pledge for the extinguishment of the obligation and necessarily this right passed to the plaintiff

as a *bona fide* purchaser of the note.    (See *Ehrlich* v. *Ewald,*
66 Cal. 97 [4 Pac. 1062]; *Sonoma Valley Bank* v. *Hill,*
59 Cal. 107; *Farmers & Merchants' Bank* v. *Copsey,* 134
Cal. 287 [66 Pac. 324]; *Commercial Sav. Bank* v. *Hornber-
ger,* 140 Cal. 16 [73 Pac. 625]; *Jones* v. *Evans,* 6 Cal. App.
88, 92 [91 Pac. 532]; *Savings Bank of St. Helena* v. *Middle-
kauff,* 113 Cal. 463, 467 [45 Pac. 840].)''

For the reasons hereinabove stated the judgment is af-
firmed.

Burnett, J., and Finch, P. J., concurred.

'A' petition by appellant to have the cause heard in the
supreme court, after judgment in the district court of
appeal was denied by the supreme court on September 24,
1923.