## WILSON v. HUGHES BROS. MFG. CO.

### No. 13450.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 13, 1936.

Rehearing Denied Dec. 18, 1936.

Allen & Allen and E. G. Moseley, all of Dallas, for appellant.

William H. Flippen and John W. Miller, both of Dallas, for appellee.

SPEER, Justice.

L. E. Wilson, the appellant here, sued Hughes Bros. Manufacturing Company, a corporation, appellee, for $1,000 alleged to be due him on a contract of employment as general manager during a period of years including 1930. Allegations were made by appellant that he contracted with appellee for employment at a guaranteed salary of $10,000 per year during the calendar years of 1929, 1930, and 1931. That during 1930 his salary was all paid except $1,000, and suit was instituted for that amount.

Appellee answered with a general denial and special plea that appellant had been in the employ of appellee in the capacity of general manager during the year 1928, and that at the directors' meeting early in 1929 the directors of appellee corporation ordered paid to appellant the sum of $1,000, in addition to the salary due him for the year 1928, as an award for the efficiency of his work and the splendid showing made by the corporation under his management during that year.

That thereafter, on about January 13, 1931, the appellant voluntarily returned said $1,000 to appellee, in consideration of his appreciation for the appellee having voted the award to him in the said sum of $1,000 over and above his salary for 1928, and the return by appellant of said money, and his donation thereof to appellee, was further prompted by the fact the appellee company had experienced a bad year in its business during 1930. That said amount so awarded and donated to appellee was accepted by it and merged into its general funds and assets.

Allegation was further made that the refund by appellant was consummated by appellee deducting said sum of $1,000 from the last installment of his salary for 1930 at his request. That appellant was present and participated in the directors' meeting

of appellee company on January 13, 1931, at which time he advised said directors that while there was still ·the sum of $2,500 unpaid on his 1930 salary, but on account of the poor earnings of the company during that year and in appreciation of the previous award (or bonus) to him for the good year of 1928, he would only accept payment of $1,500 on said balance. That the $1,500 was paid to appellant by appellee and so accepted by him, in full satisfaction and discharge of all sums owing by it to him, and that appellant was at the time of the institution of this suit, and still, is estopped to claim further payment for the $1,000 on salary as herein sued for.

The case was tried before the court and judgment rendered for appellee and against appellant.

Appeal was perfected by appellant to the Dallas Court of Civil Appeals and by the Supreme Court ordered transferred to this court.

Upon request of appellant the court filed findings of fact and conclusions of law, the effect of which were as follows:

That during 1928 appellant was under written contract with appellee for a stipulated salary as its general manager and that at the directors' meeting early in 1929, because of the efficient management of the business and the profits made, the directors voted a gift or bonus to appellant of $1,000 in addition to his salary.

That on October 10, 1929, appellant and appellee entered into a second written contract by which appellant was again employed as general manager for appellee to extend through the years 1930 and 1931, and that under the terms of that contract appellee was due appellant on salary $1,000 at the end of 1930.

That at the meeting held on January 13, 1931, the appellant advised the directors and stockholders that, due to the company's earnings during 1930, he had accepted only $1,500 of the $2,500 due him on salary contract, and that he was prompted to do this on account of the bad year experienced by the company and further to show his appreciation of the directors having voted to him an additional $1,000 for the year 1928. That on said January 13, 1931, appellant intended to give, and did give, to appellee the sum of $1,000 due him on the 1930 contract and that appellee received said gift as such.

That the appellee company experienced a loss of $16,000 during the year 1930, and that the appellant never asked for nor demanded payment of the $1,000 until he tendered his resignation in the fall of 1931.

At appellee's request for additional findings of fact, the court further found:

That the $1,000 due to appellant at the end of 1930 was not evidenced by a written instrument, and that at the time of the discussion of the $1,000 in controversy, in the meeting of January 13, 1931, the appellant did not give up nor surrender the written contract between himself and appellee.

That the appellant did not give to appellee any written instrument evidencing the gift by him to it.

That appellant knew of the entry in the minutes of the appellee company to the effect that he had forgiven the $1,000 indebtedness.

The court concluded that as a matter of law the appellant made a gift to appellee of the $1,000 on January 13, 1931, and that the gift was delivered by appellant permitting the appellee to retain the money, or by declining to draw said amount. That appellant is not entitled to recover under the circumstances.

Appellant has perfected this appeal on proper assignments of error under which he presents two points or propositions relied upon. They are in effect:

(1) One of the indispensable requisites of a valid gift inter vivos is a present intent upon the part of the donor to make the gift, which intent must be unequivocal and unconditional. That where, as in this case, the reason for not drawing the entire amount from appellee was because it did not have sufficient funds in the bank, and an absolute denial on the part of appellant of his intention to so donate the money, there was an utter lack of evidence upon which a finding of intent to donate the money could be found by the court.

(2) One of the absolute essentials to a valid gift inter vivos of a debt is that the instrument evidencing such debt so forgiven should be delivered to the donee, or some receipt or writing, and where, as in the instant case, no receipt or writing of any kind was made or delivered, and where the contract evidencing the debt was not modified, changed, altered, or

delivered to the donee, there is no delivery sufficient to complete the gift.

It is really refreshing to a reviewing court to consider a record where both the pleadings of the parties and their testimony given upon the trial are clothed in such respectful terms concerning those who are opposed to them in a lawsuit; that is what we find in this record. Each accredited the other in every instance with honesty of purpose and the highest integrity. There is very little, if any, conflict in the evidence as to what transpired; the controversy is as to the legal effect of their several acts.

■ It is well settled in this and other states that, for a gift inter vivos to be effective, it must appear from clear and satisfactory evidence that the donor intended at that time to part irrevocably with the title to the donation or gift, and that the gift shall be accompanied by actual, constructive, or symbolic delivery to the donee. Harmon et al. v. Schmitz (Tex. Com.App.) 39 S.W.(2d) 587.

Chief Justice Phillips, speaking for the Supreme Court in Taylor v. Sanford, 108 Tex. 340, 193 S.W. 661, 662, 5 A.L.R. 1660, after a discussion of the principles of gifts inter vivos, said: "The property was Sanford's, and, no rights of creditors being involved, he had the power to give it away if he chose. If such was his intention, the law should effectuate it, rather than indulge in nice distinctions, and thereby thwart what was plainly his purpose."

It then resolves itself into a question of determining from the facts whether or not the evidence was sufficiently clear and satisfactory to support the judgment of the court that a gift was made.

■ The court sat in a dual capacity in this case, to determine the facts as well as the law. If there had been a jury trial, and the testimony was sufficient to warrant the submission of an inquiry whether or not appellant intended to make a gift of the fund to appellee, and the jury had answered in the affirmative, and the verdict would have supported a judgment, then it follows that, in the absence of a jury, the court would have been warranted in finding the facts were for appellee and in rendering judgment to that effect.

There is no conflict in the testimony of the parties which shows that during the years discussed appellant was a director and stockholder in the appellee company, and that for some time prior to 1928 the company had been losing considerable money. That appellant was called to its general management during 1928, and under his supervision the company made approximately $24,000. That both directors' and stockholders' semiannual meetings were always held early in January. That, out of appreciation for what appellant had done in the business, the directors voted him as a bonus in January, 1929, over and above his salary for 1928, the sum of $1,000; a new contract was entered into on October 10, 1929, by which appellant was guaranteed compensation as general manager during 1930 and 1931 in the sum of $10,000 per year. The appellee company was not prosperous through 1930 and lost $16,000. At the January, 1931, directors' meeting, the matter of losses to the business was up for discussion, appellant and other directors participating, and it is the proceedings at that meeting that must determine this case.

Henry C. Hughes, president of appellee company, testified as to what was said and done at the January 13, 1931, meeting to the effect that appellant stated that, since the company had made no money during 1930, he would not take more than $1,500 of the $2,500 due him on salary and for the further reason the company had given him a bonus in 1928.

E. J. Cannon, Jr., testified he was vice president of the company and a member of the executive committee, and that in the January 13, 1931, meeting appellant said, since the company had sustained a loss in its operations during 1930, he wanted to return to the company the $1,000 bonus previously granted to him; he was not positive the appellant referred to the previous bonus voted him. He further testified that it was his recollection appellant had made these statements to him prior to the time they went into the stockholders' and directors' meetings. C. E. Gardner testified he was secretary and treasurer of appellee and participated in the 1931 meeting, took notes of the proceedings had and later written them into the minutes. That appellant stated in the meeting that, inasmuch as the company had been nice to him, and the company had made no money during 1930, he wanted to show his appreciation by only accepting $1,500 of the $2,500 due him; those present in the meeting congratulated appellant and expressed their appreciation. The minutes of the meeting showed sub-

stantially as each of these parties had testified.

The appellant testified he was not positive whether he made any statement before the meeting or not. That he only drew $1,500 of the balance due because the bank account did not show enough to pay him in full. He was not positive, but it might have been brought up at the directors' meeting that he was only drawing $1,500 of the $2,500 due, in appreciation of what the company had previously done for him. He further testified he did not understand Mr. Green (now deceased) to say that appellant was giving this $1,000 to the company and that, if he had so understood it, he would not have remained silent, that is, if the business relations between the parties had remained pleasant and satisfactory, he did not know what he would have said at the time. That, if he could have gotten the co-operation of the other officers, he had in mind at the time that he might donate the money due him. He testified that in July, 1931, he proposed that he would reduce his salary to $80 per week if the other officers would agree to a similar reduction, but this was not done, and that in August following he tendered his resignation effective December 31, 1931, and asked that his salary be paid as under the contract. That it was his intention, when the statement was made in the directors' meeting that he was donating the $1,000, to do so if he could get the co-operation of the directors during the year.

We have carefully studied the evidence adduced by the respective parties, and we believe it is sufficient to clearly and satisfactorily establish and support the conclusions reached by the trial court. The testimony of those present in the meeting on January 31, 1931, shows that it was stated in the meeting either by appellant or in his presence that he was forgiving the debt for the reasons shown, and that each of them so understood it. The acts relied upon by them are not seriously disputed by appellant; he admits that the things they testified to may have happened, but of this he is not positive. Appellant insists, however, that he did not really have the intention to then and there donate or give the fund to appellee; there is nothing in the testimony of appellant to show that he said or did anything at the meeting to indicate he did not intend to make the gift, in the manner and for the reasons related either by him or by some one else in his presence at the directors' meeting. By his letter in August, 1931, he tendered his resignation effective December 31, 1931, which was the expiration of his contract. Appellant testified he first requested the payment of the $1,000 on December 30, 1931. Little could be accomplished by theorizing upon the reasonableness of the alleged donation of $1,000 to appellee, but there are circumstances in connection with the matter which shed light on the contentions of the respective parties. The officers of the appellee company, testified rather positively that appellant had forgiven the debt in the directors' meeting and that several had discussed it there in appellant's presence, and that all congratulated him upon his generosity and fine spirit of loyalty to the company. The appellant said he did not make the statements in the meeting attributed to him, but that he was not positive but that others may have brought up the subject at the meeting as testified to by them. The contentions of appellee are strengthened by the uncontroverted fact that appellant made no request for the payment of the balance on his salary until about a year after it is claimed he remitted it. Appellee's contention, we think is further corroborated by the fact, as related by appellant, that, in an effort to put the business on a paying basis, and in fairness to the stockholders, he, in July of 1931, offered to reduce his own salary half or more if other officers would do the same.

These matters may be properly taken into consideration in arriving at a conclusion as to whether or not appellant intended at the January 13, 1931, meeting to definitely forgive the debt. Every evidence of such intention appears in the record when the transactions had at and before the meeting alone are considered. It was not until on December 30, 1931, one day before appellant's resignation was to become effective, that a contrary intention is asserted. He testified upon the trial that he had no such intention of making the donation unconditionally, at the directors' meeting. We do not think that by asserting a year later, nor upon the trial, that he had a secret mental reservation all the time, in connection with the gift, he could defeat or refute what his conduct fairly said and implied in the meeting. Nor could he be heard to say he only meant that he intended to forgive the debt owing to him provided the

other officers gave him the proper cooperation during the coming or then current year. We think there was sufficient clear, convincing, and unequivocal evidence upon which the court could base its conclusions, and that there was no error in his doing so.

■ Under his second point appellant urges the proposition that, because the written contract was not surrendered and no written evidence passed of an intention to give the money, and because no tangible object changed hands from the donor to the alleged donee, the evidence was insufficient to establish a gift inter vivos. With this contention we cannot agree. Under the circumstances surrounding the facts in this case, there was little, if anything, of a tangible nature that could pass. Generally, when we speak of one person giving something to another, we are wont to think of the object, the item, or thing so given, and perhaps the best evidence that it was a gift is that the item passed from the possession of the one to the other with expressed or clearly implied intention of the donor that it should be a gift; but this cannot always hold true. A receipt for the indebtedness could have been given by appellant in this case, but even a receipt could subsequently be attacked; the donation, if made, was as effective between the parties as if a receipt had been given by appellant and the whole contract surrendered or modified in writing. In case of Brown v. Fore (Tex. Com.App.) 12 S.W.(2d) 114, 117, 63 A.L.R. 435, the court had under consideration whether or not a gift of an existing debt not evidenced by a writing was valid without the passing of some tangible evidence of the gift, and it was there held:

"The above testimony of Garrison, with the explanatory facts just stated, raise the fact issue of an executed gift to Mrs. Fore of the purchase-money claims in controversy. A valid parol transfer of a claim sounding in debt may be made, notwithstanding the claim is not evidenced by writing. Rollison v. Hope, 18 Tex. 446; White v. Downs, 40 Tex. [225] 236. The rights with which F. M. Fore was invested, and which constituted the subject-matter of the alleged gift, had no corporeal existence, and therefore a delivery of possession to the donee was not requisite to the consummation of a valid

gift of those rights by the donor. Cowen v. First National Bank, 94 Tex. 547, 63 S.W. 532, 64 S.W. 778."

In the case of Weems v. First National Bank of Winnsboro (Tex.Civ.App.) 234 S.W. 931, 932, the validity of a gift was under consideration as controlled by Rev. Civ.St.1911, art. 3968 requiring actual possession of goods or chattels to pass from the donor to the donee as a requisite to the gift; and considering the facts of that case the court said: "It is true, as contended by plaintiff in error, that in order to constitute a valid parol gift causa mortis, there must be a delivery by the donor of the thing given and an actual acceptance of it by the donee. * * * But actual, physical delivery of a chose in action or of an incorporeal right cannot be required. In such cases what amounts to delivery must be determined from all the facts and circumstances of the case, and constructive delivery is held to satisfy the requirements of the law."

Appellee has quoted in its brief from the case of Green v. Langdon, 28 Mich. 221, which we consider in point. There it was said: "As the debt which was the subject of the gift, when considered with reference to the fact that the donee was the debtor, and that only part of the debt was attempted to be given, did not admit of actual delivery, and as all was done that could well be done, under the circumstances, to render the gift effectual, we do not think the act and intention of the donor should be defeated merely because the subject did not admit of an actual or technical delivery."

In the case at bar the facts surrounding the conditions claimed by appellee to constitute the gift were sufficient to raise the issue of a gift without the changing of possession of anything of a corporeal nature. In the very nature of the transaction there was nothing tangible to change hands. The sufficiency of the evidence to authorize the court to resolve the question against appellant has been discussed by us under the first proposition presented. We hold the evidence is sufficient to support the judgment rendered, and the point must be overruled.

**The judgment of the trial court is affirmed.**