**WEBB v. WEBB et al.**

No. 2482.

Court of Civil Appeals of Texas. Eastland.

Nov. 10, 1944.

Rehearing Denied Dec. 15, 1944.

James A. Stephens, of Benjamin, and Coombes & Andrews, of Stamford, for appellant.

Ratliff & Ratliff, of Haskell, and D. J. Brookreson, of Benjamin, for appellees.

GRISSOM, Justice.

This is an interpleader suit brought by the Citizens State Bank of Knox City, Texas, as a disinterested stake holder, against Ray Webb, the surviving son of Hugh Webb, deceased, and Elizabeth Webb, his surviving wife. The purpose of the suit was to have the court decide which of said defendants was entitled to a deposit of $8,005.65 in said bank in the name of E. Webb. The trial was to the court. The court awarded said deposit, less attorney's fees allowed the bank, to Elizabeth Webb. Ray Webb has appealed.

Elizabeth and Hugh Webb were married in 1911. Hugh Webb died, intestate, on July 22, 1943. They had no children. Appellant, Ray Webb, is the only child of Hugh Webb. Ray Webb was about forty years of age at the time of his father's death. Elizabeth Webb had seen her husband's son only one time prior to her husband's death. Ray Webb had never lived with them, never visited them, and her husband never spoke of him. Hugh and Elizabeth Webb purchased a farm in Haskell County with community funds. Shortly prior to Hugh Webb's death, this farm was sold through the Farm Security Administration. The sale was closed through Hon. W. P. Ratliff, an attorney at Haskell,

who obtained three checks aggregating the amount of the deposit in question. On July 15, 1943, Mr. and Mrs. Webb went from their home in Knox City to the home of Otto Lawson in Vernon. Hugh Webb was sick. Mrs. Lawson was the niece of Mrs. Webb. The Webbs executed their deed to the Haskell County farm on July 15, before they left their home for Vernon. On Monday morning, July 19, 1943, Mr. Webb called his wife and said to her in the presence of Mrs. Lawson: "Dutch, I am uneasy about the check for the farm; I want you to have that money for the farm."

Mrs. Webb replied: "All right, Dude, we will fix that when we get home." Mr. Webb said: "No, I want it fixed now. You go and call Mr. Ratliff and see if he has sent that check, and if he says he has, call the bank and tell them to go get the checks and deposit them, don't forget, deposit them to 'E. Webb'."

Mr. Webb further said: "I want you to have that money, Dutch; I am giving it to you."

Mrs. Webb replied: "All right, Dude, if that is what you want, I will take it and take care of it."

The foregoing is the testimony of Mrs. Lawson. Mrs. Webb testified that she had carried a bank account with the plaintiff bank at Knox City for several years before her husband's death in the name of E. Webb; that E. was the initial for Elizabeth, that E. Webb and Elizabeth Webb were the same person. The testimony of Mrs. Webb, Mrs. Lawson, and Mr. Ratliff further shows that on Monday, July 19, Mrs. Webb called Mr. Ratliff at Haskell over the telephone, as her husband had instructed, and inquired about the checks given in payment for the farm; that Mrs. Webb told Mr. Ratliff that she wanted to get the checks; that she was informed that he had mailed the checks to Hugh Webb at Knox City on July 16. Mr. Ratliff suggested that she call the banker and ask him to get the checks out of the post office; that Mrs. Webb than called Mr. Averitt of the Citizens State Bank of Knox City, Texas. She told him the checks were in the post office and, as instructed by her husband, asked him to get the checks and deposit them to the credit of E. Webb. Mr. Averitt evidently did as he was instructed, because said three checks were deposited to the credit of E. Webb in said bank on that day. The fol-

lowing morning, July 20, Hugh Webb expressed uneasiness about the checks and instructed his wife to again call Mr. Averitt and see if he had obtained the checks and deposited them to the credit of E. Webb. Hugh Webb said to his wife: "I am still uneasy; I don't know whether they got that check out of the bank or not. You go and call Joe Averitt and see if he got that check and deposited it to E. Webb." When she started out the door, he added: "Be sure and see if he deposited it to E. Webb." Mrs. Webb called the bank again on that day. There was testimony that Mr. Webb seemed better "after he got that off his mind". The following day Mr. Webb was carried to a hospital, where he died on July 22. A statement rendered by the telephone company shows Mrs. Webb's calls to Haskell and Knox City on July 19 and another call to Knox City on July 20. Mrs. Webb qualified as community administratrix. She filed an inventory of the community estate. It did not list the $8,005.65 evidenced by the deposit made to the credit of E. Webb in the Citizens State Bank on July 19.

Mrs. Lawson testified, on cross-examination, that on July 19 Elizabeth Webb cashed a check at Perkins-Timberlake, that she did not see the check when it was written, that she later saw the check "in her statement when it came back from the bank", that the check was signed "E. Webb, by wife". There was no further testimony casting any light on this check. Ray Webb introduced deposit slips issued by the Citizens State Bank of Knox City, Texas, showing the following deposits to the credit of E. Webb:

5–19–43, $500.00, with the notation "Note due 7–1–43 bears interest from date".

7–14–43, 1 bull $138.18, 21 cattle $1270.89, making a total of $1409.07.

6–14–43, $500.00, with the notation "Note due 7–14–43 bears interest from date".

7–10–1943, shows a loan of $500.00, a charge of $1.00, and a net deposit of $499.00.

7–20–1943, defense bond sold, $76.00, gas tax refund, $65.84, total $141.84.

Ray Webb pleaded that the community estate of Elizabeth and Hugh Webb owed certain debts, including "three notes for $500.00 each due Citizens State Bank, Knox City, Texas". It was stipulated on the trial that the indebtedness alleged in

the answer of Ray Webb constituted debts of the community estate and were properly chargeable thereto. It was further agreed that there was a community estate "other than the funds involved in this cause" more than sufficient to discharge the community debts set forth in the answer of Ray Webb, and that Mrs. Elizabeth Webb had been and was at the time of the trial paying said debts out of the community estate, and that all of said debts "have been paid out of community funds other than the funds involved in this controversy".

There are no findings of fact and conclusions of law in the record. However, the judgment recites that "Hugh Webb, prior to his death, gave and delivered to his wife, the said Mrs. Elizabeth Webb, all of the proceeds of the sale of said farm, same being the said sum of $8,005.65; that the said Mrs. Elizabeth Webb accepted said sum of $8,005.65 prior to her said husband's death, and that a valid gift of the same was made to her, and that the said sum of $8,005.65, was and is the separate property and estate of the said Mrs. Elizabeth Webb, and is not a part of the community estate of the said Mrs. Elizabeth Webb and her deceased husband, Hugh Webb, and that the defendant and cross-defendant, Ray Webb, has no interest therein whatsoever, and is not entitled to any portion of the same."

We will not stop to consider whether said recital in the judgment has the effect of findings of fact and conclusions of law. In the absence of said recital, this court would have been required to presume that the trial court so found, in support of the judgment rendered. Therefore, a determination of the question suggested becomes immaterial. In the absence of a finding to the contrary, every issuable fact must be considered by us as having been found in favor of the appellee, Elizabeth Webb. Furthermore, in passing upon the sufficiency of the evidence to sustain such implied findings, we are required to review the same in the light most favorable to the party in whose favor the judgment was rendered by the trial court and reject all evidence favorable to the opposite contention and consider only the facts and circumstances which tend to sustain the trial court's findings, whether implied or expressed. Barrett v. Calloway, Tex.Civ.App., 66 S.W.2d 367, 369.

Appellant, Ray Webb, presents one point. That is, that the evidence is insufficient to show a completed gift from Hugh to Elizabeth Webb by actual, constructive or symbolic delivery during the lifetime of Hugh Webb. Appellant correctly states that "the pivotal point involved in this appeal is whether the evidence shows a completed gift by delivery, actual, constructive, or symbolic".

Giving the evidence the most favorable interpretation to which it is susceptible in favor of the findings implied in order to support the judgment of the trial court, as we are required to do, we have the following fact situation upon which to base a decision whether the evidence is sufficient to sustain a finding of delivery. Elizabeth Webb had an account in the Citizens State Bank of Knox City, Texas, for several years prior to the making of the deposit in question, which was carried by her in the name of "E. Webb". The Webbs sold their farm for $8,005.65 and executed a deed thereto on the 15th day of July, 1943. The deed was delivered to Mr. Ratliff, who was handling the matter for the Farm Security Administration, through which the land was being sold. That afternoon Mr. Webb, being sick, was taken to the home of his wife's niece in Vernon, where he was put to bed. Three days after the deed was delivered to Mr. Ratliff, that is, on July 19, Mr. Webb called his wife and in the presence of Mrs. Lawson told her that he wanted her to have the money that they were getting from the sale of the farm. Mrs. Webb tried to put him off, and said that they would take care of that when they returned home. Mr. Webb insisted that the matter be fixed "now". He instructed his wife to call Mr. Ratliff and see if he had mailed the checks, that if Mr. Ratliff had mailed the checks, then she should call the Knox City bank and tell them to get the checks out of the post office and deposit them to the credit of E. Webb. Hugh Webb said to his wife, "I want you to have that money. I am giving it to you." Mrs. Webb accepted the gift. She said she would take it and take care of it. E. Webb and Elizabeth Webb were the same person. Elizabeth Webb obeyed her husband's instructions. She learned from Mr. Ratliff that he had mailed the checks to Hugh Webb at Knox City on July 15. She relayed Hugh Webb's instruction to the banker to get the checks

and deposit them to her credit. The banker obtained the checks and, in accordance with the instructions of Hugh Webb related to him by Hugh Webb's agent, Elizabeth Webb, deposited the checks to her credit. (The legal situation was then the same as if Hugh Webb had personally deposited the money to the credit of his wife.) The next day Mr. Webb was worried about the possibility that the banker had not obtained the checks and deposited them to the credit of his wife. He instructed her to again call the banker and see whether or not he had deposited the checks to the credit of "E. Webb". She again called the bank and was evidently informed that the deposit had been made as instructed. Mr. Webb "seemed better after he got that off his mind". Unquestionably, the evidence of Mrs. Lawson as to Hugh Webb's statements to his wife are sufficient to show his intention to give his wife the money derived from the sale of their farm. It also shows an acceptance by the wife. This does not seem to be questioned by the appellant, but he insists that the evidence is insufficient to show delivery. The immediately preceding statement of the fact situation, of course, is strictly from the viewpoint of Elizabeth Webb. We think it is readily susceptible of the interpretation given it. As heretofore stated, in the absence of findings of fact by the trial court to the contrary, we are required to presume that the trial court has so found. We think the facts are sufficient to sustain a finding of delivery. According to Mrs. Webb's testimony, the account in the name of E. Webb was hers. E. Webb and Elizabeth Webb were the same person. Mrs. Webb acted as her husband's agent in instructing the banker, Mr. Averitt, to deposit the money to the credit of E. Webb. When it was so deposited, it was delivered to Elizabeth Webb as surely as if it had been actually handed to her by her husband. Williams v. Smith, 66 Ark. 299, 50 S.W. 513, 514. The certificate of deposit was evidently delivered to Elizabeth Webb; she introduced it in evidence.

■ At the time Hugh Webb gave the money to his wife, Elizabeth, that money was represented by checks which were not then and had never been in the possession of Hugh Webb. Hugh Webb was sick and could not get the checks and hand them to his wife. It was impossible, therefore, for Mr. Webb, under the situation that existed, to actually physically deliver the checks, or that for which they stood, the money, to his wife. If not an actual, there was at least a constructive or symbolic delivery to Elizabeth Webb— by a deposit, under the direction of Hugh Webb, to the credit of his wife. We are of the opinion that this satisfied the requirements of the law as to delivery. Weems v. First Nat'l Bank of Winnsboro, Tex.Civ.App., 234 S.W. 931, 932; Schauer v. Von Schauer, Tex.Civ.App., 138 S.W. 145, 149, writ refused; Rector v. Continental Bank & Trust Co., Tex.Civ.App., 180 S.W. 309, 311; Wilson v. Hughes Bros. Mfg. Co., Tex.Civ.App., 99 S.W.2d 411, 415; Grissom v. Sternberger, 4 Cir., 10 F.2d 764, 766; Lord v. New York Life Ins. Co., 95 Tex. 216, 66 S.W. 290, 56 L.R.A. 596, 93 Am.St.Rep. 827; Bowman v. Sears, 63 Cal.App. 235, 218 P. 489, 495; Taylor v. Sanford, 108 Tex. 340, 345, 193 S.W. 661, 5 A.L.R. 1660; Brown v. Fore, Tex.Com.App., 12 S.W.2d 114, 117, 63 A. L.R. 435; Ward v. Jones, Tex.Civ.App., 293 S.W. 604, 607; 38 C.J.S. Gifts, §§ 49, 52, pp. 832, 838; 40 A.L.R. 508; 12 R.C. L. 934; 24 Am.Jur. 744; 103 A.L.R. 1131; 28 C.J. 663, note 31; 21 Tex.Jur. 44.

■ If appellees' evidence is believed, Hugh Webb's intention to give the money to his wife is unquestionably established. The same is true as to acceptance by Mrs. Webb. We think delivery is likewise shown. In connection with the last-stated conclusion, we call attention to the language of Justice Sharp in Peacock v. Joy, 137 Tex. 387, 390, 153 S.W.2d 440, 442, as follows: "In 21 Tex.Jur., p. 21, the rules relating to gifts in this State are announced as follows: 'The doctrine of constructive delivery has been interpreted broadly to aid the completion of a gift where there has been no actual delivery.' Lord v. New York Life Ins. Co., 95 Tex. 216, 225, 66 S.W. 290, 56 L.R.A. 596, 93 Am.St.Rep. 827. 'The doctrine now applied to gifts has been announced by our Supreme Court as being that, when the donor's intention has been clearly revealed, "the law should effectuate it, rather than indulge in nice distinctions and thereby thwart what was plainly his purpose."'" Taylor v. Sanford, 108 Tex. 340, 345, 193 S.W. 661, 662, 5 A.L.R. 1660."

In Hillebrant v. Brewer, 6 Tex. 45, 49, 55 Am.Dec. 757, the Supreme Court said: "But what will amount to a delivery, must depend upon the nature of the thing and

the circumstances of the case. Actual, manual delivery is not, in all cases, necessary. Where the thing is incapable of actual delivery, or where the situation of the parties, or the circumstances of the case, will not admit of it, it may be symbolical or constructive. (2 Kent, Com. 439; [Carradine v. Collins], 7 Smedes & M. [Miss.], 428; [Blakey v. Heirs of Blakey], 9 Ala. 391.)"

The judgment of the trial court is affirmed.