**HOUSTON BANK & TRUST COMPANY,**
Appellant,

v.

Gabriel J. LEE et ux., Appellees.

No. 13706.

Court of Civil Appeals of Texas.

Houston.

March 16, 1961.

Rehearing Denied April 6, 1961.

Virgil Childress and Childress, Port & Crady, Houston, for appellant.

Fuller & Evans, John M. Evans, Denver, Colo., and Vinson, Elkins, Weems & Searls, C. E. Bryson and Ben H. Rice, III, Houston, for appellees.

COLEMAN, Justice.

Gabriel J. Lee, Sr., and his wife, Marie Clark Lee, brought suit in the District Court of Harris County, Texas, to recover possession of certain real and personal property from Houston Bank & Trust Company. The parties will be designated as they were in the Trial Court. Both parties filed motions for summary judgment and plaintiffs' motion was sustained. Defendant has properly appealed to this Court.

On June 17, 1959, defendant was appointed temporary guardian of the estate of Gabriel J. Lee, Sr., by the County Court of Harris County, Texas, the order reciting that by reason of a stroke, and complications following, the said Gabriel J. Lee, Sr., was not mentally competent to conduct his own business and personal affairs. Defendant immediately qualified as such and gained possession of the property in question. On October 20, 1959 plaintiffs formally demanded that the property be delivered to Marie Clark Lee. It is admitted that the properties were of a value in excess of $1,000 and that defendant has refused to deliver the community property to Marie Clark Lee. By affidavit filed with the motion for summary judgment, no counter-affidavit being filed, it is established that Marie Clark Lee is the wife of Gabriel J. Lee, Sr., and is of sound mind; that all of the property in dispute is community property; that the order appointing defendant temporary guardian was made while plaintiffs were in Colorado and was without their consent. The record does not show that either party has applied to the County Court for relief, or what, if any, action has been taken toward perpetuation of the guardianship.

Appellant complains that the District Court lacked jurisdiction to order the return of the property in question since the County Court had acquired original, prior and exclusive jurisdiction over it, or, if the District Court did have jurisdiction, it abused its discretion in declining to exercise same.

Sections 157 and 158 of the Probate Code, V.A.T.S., as amended, provide as follows:

§ 157. When Spouse Incompetent

"Whenever a husband or wife is judicially declared to be incompetent, the other spouse, in the capacity of surviving partner of the marital partnership, thereupon acquires full power to manage, control, and dispose of the entire community estate, including the part which the incompetent spouse would legally have power to manage in the absence of such incompetency, and no administration, community or otherwise, shall be necessary. Guardianship of the estate of the incompetent spouse shall not be necessary when the other spouse is competent unless the incompetent spouse owns separate property, and then as to such separate property only. The qualification of a guardian of the estate of an incompetent spouse does not deprive the competent spouse of the right to manage, control, and dispose of the entire community estate as provided in this Code."

§ 158. Duty of Guardians

"A guardian of the estate of an incompetent married person who, as guardian, is administering community property as part of the estate of such ward, shall forthwith deliver such community property to the sane spouse upon demand."

Appellant contends that the rights given to the spouse of an incompetent person by

Section 157, as well as the duty imposed on the guardian by Section 158, of the Probate Code, depend on the meaning of the first clause of Section 157: "Whenever a husband or wife is judicially declared to be incompetent, \* \* \*". He traces this background and concludes, in effect, that properly interpreted the clause means, "Whenever a husband or wife is declared to be insane in a trial conducted for the purpose of committing him or her to an institution," as authorized by Sections 415–426 of the Probate Code and by the provisions of the Mental Health Code (Vernon's Annotated Civil Statutes, Articles 5547–1 to 5547–104).

In 1893 the 23rd Legislature amended Articles 2165, 2166, 2167 and 2181 of the Revised Civil Statutes of 1879[1] so as to provide that when either the husband or wife dies intestate "or becomes insane," the entire community property passes to the survivor charged with community debts, provided (a) the husband and wife have no child or children, and (b) the deceased or insane spouse has no separate property; but if the wife dies "or becomes insane," even though she leave a child or children, her surviving husband should have the exclusive management, control and disposition of the community property in the same manner as theretofore, and the insane wife would not be required to join in any conveyances of community property.

Thereafter, in Donaldson v. Meyer, Tex. Com.App., 261 S.W. 369, it was held that the phrase "or becomes insane," as used in the 1893 amendments, meant "When the husband or wife was declared insane, as provided by law," and that a jury finding that husband was insane at the time he executed a deed did not invest wife with control over the property under such amendments. Then, in Lee v. Hall Music Co., 1931, 119 Tex. 547, 35 S.W.2d 685, 687, the court held that under the existing statutes the wife of an insane man is authorized to manage, control and dispose of the com-

munity property only if the husband "has no separate property and there be no children." The court then recommended that the legislature amend the law to give either spouse, "while the other is insane," authority to manage and dispose of community property without regard to whether there were children or separate property. The 54th Legislature in 1955, by Section 157 of the Probate Code, remedied the situation which had prompted the recommendation of the court, requiring, however, an inventory, appraisal and bond, and leaving uncertain the necessity of a guardianship in order to manage the community property where the incompetent spouse owned separate property. In 1957 the 55th Legislature amended Section 157 and gave it its present wording.

The Probate Code was drafted and presented to the Legislature by a Committee of the Texas Bar Association in cooperation with representatives of other interested organizations experienced in probate law, who undoubtedly were familiar with the recommendation of the Supreme Court discussed above. It was the result of a ten year study and the phraseology was carefully considered "line by line." One of the purposes of the Code was the elimination of the ambiguities and uncertainties of the former probate laws. "The Story of The Texas Probate Code," by John R. Anthony, South Texas Law Journal, Vol. 2, pp. 1–52. The Code was extensively discussed prior to and after its adoption in legal and banking journals and meetings. 16 Tex.Bar Journal, pp. 4 and 498; 17 Texas Bar Journal, p. 265; 18 Texas Bar Journal, pp. 375–377; 19 Texas Bar Journal, pp. 11, 69, 375; note, Baylor Law Review, vol. 9, p. 446.

The Committee on Real Estate, Probate, and Trust Law in its report to the Texas Bar Association published in the June 22, 1956, Texas Bar Journal, Vol. 19, pp. 400–401, said in part: "It is also recommended that Section 157 of the Code be revised so as to remove uncertainties now existing in

---

1. Now V.A.T.S. Probate Code, §§ 155, 157, 162, 160.

that provision." At the next session of the Legislature, Section 157 was amended so as to eliminate the word "thereon" in line 6, add the words "and then as to such separate property only" after the word "property" in line 10, and eliminate entirely the last three sentences of Section 157, V.A.T.S., Probate Code. This indicates that the language used in this section was deliberately and carefully chosen. This conclusion is borne out by comments on the Code by George M. Irving, quoted in part in Texas Bar Journal, Vol. 19, p. 11 et seq.:

"Paragraphs (p) and (y), Section 3, Chapter 1, in addition to what has been said before, makes guardianships available to those persons, among others 'who are mentally incompetent to care for themselves or to manage their property and financial affairs,' but who are not persons non compos mentis, idiots, lunatics, insane persons, nor common or habitual drunkards. Therefore, there will be a legal distinction and difference between 'persons of unsound mind' and 'incompetents' or 'incompetent persons,' and marks an important addition to our probate law."

and John R. Anthony, in "The Story of The Texas Probate Code," supra, at page 49, in which he stated:

"The principal new features are (a) * * * (b) the specification of the rights, powers, and liabilities of the sane or the surviving *spouse* so that the wife is in every respect on the same footing as the husband; (c) provision in Section 157 vesting in the sane spouse (when the other is incompetent) unrestricted authority and power to dispose of the entire community estate, * * *."

While the comments of these and other distinguished lawyers, who participated in drafting the Code and explaining it to the Legislature, are not authoritative, they are persuasive that the words used in Section 157 were chosen with care. 50 Amer.Jur., Statutes, Sec. 336, p. 328.

Gabriel J. Lee, Sr., was found mentally incompetent to conduct his own business and personal affairs by the order of the County Court, and such order also recited facts sufficient to show that the interests of his estate required the appointment of a temporary guardian.

Section 131, Probate Code, setting out the procedure for appointment of temporary guardians, provides, in part, as follows:

"(a) Necessity of Appointment. Whenever it appears to the county judge that the interest of a decedent's estate, or the interest of any minor, person of unsound mind, or common or habitual drunkard, and his or her estate, or either of them, requires immediate appointment of a personal representative, he shall, by written order, appoint a suitable temporary representative, with such limited powers as the circumstances of the case require, and such appointment may be made permanent, as herein provided.

"(b) Manner of Appointment. Such appointment may be made with or without written application and without notice or citation. The order shall designate the appointee appropriately, as 'temporary administrator' of the decedent's estate, or as 'temporary guardian' of the person or of the estate, or both, of such minor, person of unsound mind, or common or habitual drunkard, fix the bond to be given and define the powers conferred on the appointee. When any such appointee has taken and filed his oath and filed with the county clerk a bond approved by the court, the clerk shall issue to the appointee letters which shall set forth the powers to be exercised by the appointee.

"(c) Perpetuation of Appointment. The order making the appointment shall state that, unless the same is contested after service of citation, it shall be continued in force for such period of time as the court shall deem in the interest of the estate or person in-

volved, or it shall be made permanent, if found by the court to be necessary."

The order of the County Court of Harris County was authorized by the Probate Code, however it was not a final judgment, and did not "judicially declare" Gabriel J. Lee, Sr., incompetent as that term is used in Section 158 of the Probate Code. By the terms of Section 131, supra, other proceedings were contemplated and necessary before the judgment became final. The case of McGee v. State, 155 Tex.Cr.R. 639, 238 S.W.2d 707, is not applicable under the present law. Constitution of Texas, Article 1, § 15–a, Vernon's Ann.St.; Texas Probate Code, Sec. 21.

■ The Houston Bank & Trust Company, at the time of the demand by Marie Clark Lee for possession of the community property, was administering the community property as part of the estate of Gabriel J. Lee, Sr., by reason of the fact that he was incompetent. The Bank would be estopped to deny a fact upon which the validity of its appointment depended. Texas Employers' Ins. Ass'n v. King, Tex. Civ.App., 52 S.W.2d 668, error dism.; Carle et al. v. Carle, Tex.Civ.App., 234 S.W.2d 907, certified questions answered 149 Tex. 469, 234 S.W.2d 1002. It will be presumed that the Legislature had some purpose in making provision for return of possession of community property to the spouse of an incompetent person. If it applied only after the incompetent spouse had been judicially so declared, nothing would be added to the force of the provisions of Section 157. We cannot say that the Legislature intended that the guardian should have authority to administer property which another person had full power to manage, control and dispose of entirely. On the other hand, to hold that a temporary guardian can be appointed to administer the estate of an incompetent person prior to the time he is judicially declared to be such by a final judgment would give meaningful effect to both Sections 157 and 158 of the Probate Code.

"Under this rule, each statute or section is construed in the light of, with reference to, or in connection with, other statutes or sections. * * * The object of the rule is to ascertain and carry into effect the intention of the legislature. It proceeds upon the supposition that the several statutes were governed by one spirit and policy, and were intended to be consistent and harmonious in their several parts and provisions." 50 Amer.Jur., Statutes, Sec. 348, pp. 343–345.

There is no irreconcilable conflict between the provisions of Section 131 and those of Sections 157 and 158. The county judge was authorized to enter his order appointing a temporary guardian since under the record the interest of the estate of an incompetent person required it.

■ This appeal is from an order granting summary judgment and there is no showing that at the time the order appointing the guardian was entered there was no necessity for the guardianship. The order does not set out the period of time it shall continue in force or the powers of the guardian as required by Section 131 (a) and (c), Texas Probate Code, except that it empowers the guardian to order the removal or transfer of assets. If there have been further proceedings in the County Court, they are not before us as part of the record in this case. We assume in accordance with the order that the temporary appointment and injunction were continued in force after service of citation. It will be conclusively presumed as against a collateral attack that the Court in granting an application acted within its jurisdiction and made the appointment upon the conditions and terms required by the statute. 21 Tex. Jur., Sec. 70, p. 81.

On October 7, 1959, Mrs. Lee made a formal demand on the guardian that possession of the community property be transferred to her. By the terms of Sec. 158 of the Texas Probate Code, it became the duty of the guardian to "forthwith" deliver all

of the community property it was administering to her.

Mrs. Lee alleged in her pleadings that all of the property owned by her husband was acquired during marriage and constituted community property. While defendant did not file either a general or specific denial of this allegation, it specifically denied that it had wrongfully taken or was wrongfully withholding the possession of any property belonging to plaintiffs; demanded strict proof of all allegations to the contrary contained in plaintiffs' pleadings and demanded a jury trial on all issues of fact arising from such allegations. The title of Mrs. Lee to the property was in issue.

Since the guardian properly assumed control of the property in question, its action in doing so was not void as contended by appellees. While we recognize that ordinarily a court first acquiring jurisdiction of a cause of action is entitled to maintain such jurisdiction without interference by other courts, even though they also have jurisdiction, such rule does not apply here. The controlling question presented here, whether or not the property being administered was community or separate, could have been determined only in the district court. Weeks v. De Young, Tex.Civ.App., 290 S.W. 852, error ref.; Johnson v. First Nat. Bank of Marlin, Tex. Civ.App., 198 S.W. 990, error ref.; Cantrell v. Brannon, Tex.Civ.App., 16 S.W.2d 400; Cox v. Oliver, 43 Tex.Civ.App. 110, 95 S.W. 596. The trial court properly found that the property in dispute was community property since the guardian failed to file affidavits controverting that filed by Mrs. Lee. It might be noted that the guardian has not admitted that the property in question is community property.

After receipt of the demand made by Mrs. Lee, it was the duty of the guardian either to hand over the property demanded forthwith, or to excuse its failure to do so. No evidence was introduced to show that

its failure in this instance was either reasonable or justified. Under our construction of Section 158 of the Texas Probate Code, this burden rested on the guardian. Johnson v. First Nat. Bank of Marlin, supra. The Trial Court did not abuse its discretion in taxing costs against the guardian individually.

The judgment of the Trial Court is affirmed.