Jane L. WILLIAMS, Relator,

v.

The Honorable James SCANLAN, Judge Probate Court No. 3, Harris County, Texas, Respondent.

No. C14–91–273–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 9, 1991.

Substituted Dissenting Opinion June 6, 1991.

Patricia Hair, Houston, for relator.

Sharon Brand Gardner, Houston, Van E. Wittner, Houston, for respondent.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

OPINION

ROBERTSON, Justice.

After we granted leave to file the petition for writ of mandamus, respondent filed his response. The response, along with numerous exhibits, reveals that Judge Scanlan has scheduled trial for June 10, 1991, to determine the underlying factual issues on various matters, including relator's contest to the appointment of the guardian of her husband and the character of a substantial estate of the parties.

Since these issues of fact must be determined, it is inappropriate for us to exercise mandamus jurisdiction. Leave to file was improvidently granted.

The order of this court of March 21, 1991, granting motion for leave to file petition for writ of mandamus is withdrawn, as the motion for leave was improvidently granted. The motion for leave to file petition for writ of mandamus is overruled.

SEARS, Justice, dissenting.

This opinion is substituted for the Dissenting Opinion issued May 9, 1991. Without any legal authority or precedent, the trial court has deprived relator of her right to control her own $6,000,000 estate. The majority of this panel, without citing any authority or legal precedent, has condoned

a clear abuse of discretion and has refused to issue a writ of mandamus. I respectfully dissent.

Relator and John W. Williams have been married for 35 years, they have no children, and Mr. Williams has no brothers or sisters. During their 35 year marriage, the couple has accumulated an estate of approximately $6,000,000. John Williams was diagnosed in January 1989 with "a very advanced dementia of the Alzheimer's type."

The record reflects that relator went to California in August 1989. Relator testified that at that time, her husband "was able to function ... [and] was able to drive his car" despite his Alzheimer's disease. While she was in California, Thomas Minor, the Williams' accountant, contacted a private investigator, E.R. Williams, to locate and follow relator.

The record also reflects that Minor, with knowledge of the mental condition of John Williams, "borrowed" $100,000 from the estate and later "billed" the estate $80,000 for "services rendered" to pay off the loan. Relator subsequently fired Minor and accused him of stealing property from the Williams' home and funds from John Williams' bank accounts.

In June 1990, relator returned to California. She hired Brenda Bell, a professional sitter with experience caring for Alzheimer's patients, to care for her husband and for her invalid mother, Leatha Lochlin. Minor testified that on June 20, 1990, Ms. Bell telephoned him and told him that she needed money to purchase food for John Williams and Mrs. Lochlin. Minor testified that he and his wife went to Mrs. Lochlin's home where Mr. Williams was staying and determined that the living conditions there were unsatisfactory. Minor fired Ms. Bell, contacted E.R. Williams, and "sent E.R. Williams over there to check the situation on an unannounced basis." On June 22, 1990, Minor contacted E.R. Williams' daughter, Jacqueline Friedrich, who is an attorney, and "asked her for some advice." Relator returned from California on June 20, 1990. Minor did not attempt to contact relator even though he knew her whereabouts.

On June 25, 1990, Ms. Friedrich filed an unsworn application for appointment of temporary guardian. On June 28, 1990, she filed an application for temporary ex parte protective order which was granted by the probate court. On July 2, 1990, relator filed a contest to the appointment of Ms. Friedrich as John Williams' guardian. She also filed a request for removal of the guardian and filed her application for appointment of temporary guardian. On July 6, 1990, the probate court signed an order removing Ms. Friedrich as temporary guardian. The court then appointed Sharon Gardner as temporary guardian and Van Wittner as attorney ad litem. Subsequently, the court appointed Ms. Gardner as permanent guardian of John Williams' estate pending the outcome of the contest.

Relator demanded that her estate be restored to her immediately pursuant to Section 157 of the Texas Probate Code which specifically provides:

Whenever a husband or wife is judicially declared to be incompetent, the other spouse, in the capacity of surviving partner of the marital partnership, thereupon acquires full power to manage, control, and dispose of the entire community estate, including the part which the incompetent spouse would legally have power to manage in the absence of such incompetency, and no administration, community or otherwise, shall be necessary. Guardianship of the estate of the incompetent spouse shall not be necessary when the other spouse is competent unless the incompetent spouse owns separate property, and then as to such separate property only. *The qualification of a guardian of the estate of an incompetent spouse does not deprive the competent spouse of the right to manage, control, and dispose of the entire community estate* as provided in this Code.

Tex.Prob.Code Ann. § 157 (Vernon 1980) (emphasis supplied). Pursuant to the code, the trial court can only give the guardian power to manage and control the *separate* property of the ward. The code could not be more specific, nor could the language be more clear. Therefore, relator is entitled to *manage, control,* and *dispose* of the

entire community estate without regard to whether she may squander the estate. There is no provision in the probate code upon which the trial court or this court could rely as authority to deny relator the right to control her own community estate.

The record shows that the relator has further made demands upon the permanent guardian, as well as the trial court, to deliver all of the community property to her pursuant to Section 158 of the Probate Code. Section 158 is equally clear and unambiguous.

A guardian of the estate of an incompetent married person who, as guardian, is administering community property as part of the estate of such ward shall *forthwith* deliver such community property to the sane spouse upon demand.

TEX.PROB.CODE ANN. § 158 (Vernon 1980) (emphasis supplied). The refusal to deliver the community property estate *forthwith* was clearly an abuse of discretion and was not based upon any legal authority.

Although there are a lot of claims and allegations from both sides as to acts committed by the other, and although the trial court and the majority of this court are acting with the purest intent to protect the interest of the ward, they cannot put on blindfolds and ignore the law. The majority opinion takes the position that this deprivation of the rights of the relator is okay because Judge Scanlan has scheduled a trial for June 10, 1991, to determine the underlying factual issues on various matters. The majority *concludes* that the court is going to hold a hearing on the character of the estate of the parties. However, there is nothing in the record to support such a conclusion.

The order entered by the trial court which caused relator to file this writ of mandamus is that order denying her motion that the guardian deliver to her *forthwith* the community property estate. A hand written notation on the bottom of that order reads: "The motion is denied until underlying fact questions are resolved." Not only is it pure conjecture to believe the trial court is going to hold a hearing to determine the character of the estate, it is

also unrealistic to make that assumption based upon the face of the record. In the nine months that relator has been denied her estate, those in control have yet to identify *one single piece of property* as being the separate property of the ward. Although relator has filed a sworn affidavit in which she identified the community property and the separate property of herself and her spouse, she has still been denied the right to control, manage and dispose of the community property estate in violation of § 158 of the Texas Probate Code. This is simply another case where the assets of an estate will be severely eroded by unnecessary legal fees paid to attorneys appointed by the trial court. I am appalled that it has happened, and I am disappointed that the court of appeals has not corrected this abomination of the law.

It is not material or relevant that the trial court is having a hearing on June 10, 1991, or that the hearing *may be* for the purpose of determining the character of the estate of the parties. The only matter before the trial court, or this court, is who has the right to manage and control the estate *pending* a determination of its character. Whether we deprive relator of her lawful rights for one day or one month, it is contrary to the law and is an abuse of discretion.

There can be no clearer abuse of discretion than that of a trial court that will take away the estate that the parties spent 35 years accumulating. Further, the court does so without being able to cite any authority or legal justification for its action.

The only case cited by either party dealing with an interpretation of Section 157 of the Probate Code is *Houston Bank & Trust Co. v. Lee*, 345 S.W.2d 320 (Tex.Civ. App.—Houston 1961, writ dism'd). That opinion goes into great detail discussing the legislative history and intent, and it arrives at the inescapable conclusion that *upon demand* by the same spouse, it is the duty of the guardian to hand over the property demanded *forthwith*. In the *Lee* case, as in this case, the guardian has failed to admit that the property in question is community property. However, un-

til such a determination of the character of the property is made, the Probate Code provides that the *sane spouse,* and no other person, is entitled to manage and control the *entire* community estate. This relator submitted to a court-ordered psychiatric examination and was found to be sane.

Relator and John Williams have been married for 35 years and the *presumption* remains that *all* the estate is community. TEX.FAM.CODE ANN. § 5.02 (Vernon Supp. 1991); *Wilson v. Wilson,* 145 Tex. 607, 201 S.W.2d 226 (1947). The burden is on the party asserting otherwise to overcome the presumption by clear and satisfactory evidence. *Estate of Bridges v. Mosebrook,* 662 S.W.2d 116, 122 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.); *Gonzalez v. Guajardo de Gonzalez,* 541 S.W.2d 865, 868 (Tex.Civ.App.—Waco 1976, no writ). The fact that the guardian and/or the attorney ad litem have not been able to identify any specific piece of property as being the separate property of the ward *cannot* deprive relator of her rights under the law. There is simply *no* provision in the probate code which allows a guardian to keep control of the estate against the wishes of the sane spouse. The community assets are being drained in an attempt to identify them and in resisting the lawful demands of relator.

In addition, during Ms. Gardner's first four months as guardian the probate court approved the payment of approximately $60,000 in legal fees to Ms. Gardner's law firm from the Williams' estate. During their first nine months tenure as guardian and attorney ad litem respectively, Ms. Gardner and Mr. Wittner, have been unable to determine the character of the property accumulated over the Williams' 35–year marriage, notwithstanding a *sworn* affidavit filed by relator describing her husband's separate property. Moreover, relator's requests for community funds to support herself and for money to pay her attorney's fees have been disputed and opposed by Mr. Wittner. The abuse of discretion could not be clearer.

I would grant the writ of mandamus and deliver the entire estate to the relator forthwith pursuant to Sections 157 and 158 of the Texas Probate Code.