**The ESTATE OF Edith W. BRIDGES, Deceased, and Agri-Place, Inc., Appellants,**

**v.**

**Betty Jean MOSEBROOK, Individually and as Custodian for her children, Mark Mosebrook and Michael Mosebrook; Nancy Ann Bridges and Barbara Lynn Bridges, Appellees.**

**No. 2-83-065-CV.**

Court of Appeals of Texas, Fort Worth.

Nov. 17, 1983.

Rehearing Denied Dec. 28, 1983.

John A. Pace, Dallas, for Estate of Edith W. Bridges.

Jonathan A. Pace, Dallas, for Agri-Place, Inc.

Albon O. Head, Jr. and Robert J. Keffler, McLean, Sanders, Price, Head & Ellis, Fort Worth, for appellees.

Before HUGHES, BURDOCK and JOE SPURLOCK, II, JJ.

OPINION

BURDOCK, Justice.

This is an appeal from a declaratory judgment wherein the trial court held appellees to be owners of approximately 59 percent of the stock of a closely-held corporation. In addition, the trial court ordered appellants to account for all income and revenue of the corporation from July 13, 1977 to the date of judgment. Finally, the trial court ordered that a writ of mandamus be issued ordering appellants to properly execute the stock certificates in appellees' possession.

We affirm.

Appellants claim ownership of the corporation through a testamentary bequest from Edith Weaver Bridges, and they predicate their appeal on four points of error. Appellants argue: (1) the trial court erred in holding that the shares of stock of the corporation had been issued because none of the shares were signed by the president or vice president; (2) the trial court erred in finding that the shares of stock had been delivered to appellees and in holding that the issuance of stock constituted a valid inter vivos gift to the appellees; (3) the trial court erred in holding that W.L. Bridges, Sr. had the power and authorization to deliver the stock to appellees because the real estate in the corporation was the separate property of Edith W. Bridges; and (4) the trial court erred in failing to find that the fee title to the land in the corporation was vested in Edith W. Bridges as her separate property.

Because of the complex fact situation of the present case, we find it necessary to set forth the facts in detail.

W.L. Bridges, Sr. had a son, W.L. Bridges, Jr., by a prior marriage. The appellees, plaintiffs below, are the children of Bridges, Jr. and grandchildren of Bridges, Sr., namely Nancy Ann Bridges, Barbara Lynn Bridges, and Betty Jean Mosebrook, individually and as custodian for her children, Mark Mosebrook and Michael Mosebrook. In 1944, Bridges, Sr. married Edith Weaver Bridges, also referred to as Edith. The appellants are Paulette Jackson, a niece

of Edith W. Bridges, and her husband, Tracy Jackson, co-executors of the estate of Edith W. Bridges.

The corporation in question, Agri-Place, Inc., is a closely-held Texas corporation incorporated on October 27, 1969. The initial and principal asset of the corporation was a twenty-acre tract of land, purchased in 1949 by Bridges, Sr. and his son Bridges, Jr., located in Arlington, Texas. Although there was testimony to the contrary, the trial court found that the down payment on the twenty-acre tract, known as Red Wright Farm, was paid with funds from a joint bank account maintained by Bridges, Sr. and his son. On April 2, 1956, Bridges, Sr. conveyed the farm to his brother-in-law, Paul Weaver, in an effort to avoid seizure of the property by the Internal Revenue Service. No consideration was exchanged for the property. Thereafter, Weaver executed two deeds purporting to convey Red Wright Farm. The first deed, dated April 4, 1956 named Edith W. Bridges as grantee and was not recorded until November 24, 1982. No consideration was given by Edith to Weaver for this transfer. The second deed, dated October 28, 1969, named Agri-Place, Inc. as grantee and was recorded on March 15, 1971.

Bridges, Jr. testified that the purpose for organizing Agri-Place, Inc. was to transfer ownership of Red Wright Farm to a corporate entity and, thereafter, to distribute the stock in that corporation to members of his father's and step-mother's respective families. Bridges, Sr. and his wife, Edith, intended to make a gift of shares of the common stock of Agri-Place, Inc., and in 1971, Bridges, Sr. engaged an attorney to assist him in issuing 20,000 shares. The stock was first issued to Weaver, and Weaver then deeded Red Wright Farm into Agri-Place, Inc. After this transaction, Weaver's shares were cancelled, and the attorney issued stock, in specified amounts, to the following persons: Betty Jean Mosebrook (3,500 shares), Mark Mosebrook (625 shares), Michael Mosebrook (625 shares), Nancy Ann Bridges (3,500 shares), Barbara Lynn Bridges (3,500 shares), Bobby Weaver Rapp (1,250 shares), Paulette Jackson (3,500 shares), and Shane Jackson (3,500 shares).

These stock certificates were delivered to the above named individuals but retained by Bridges, Sr. It was further established that the stock certificates were signed by Betty Jean Mosebrook, secretary of the corporation, but not by Bridges, Sr., the president of the corporation.

The stock registry of Agri-Place, Inc. and the minutes of the stockholder meetings showed the appellees to be owners of the respective shares of stock, as previously set forth. During these shareholder meetings and in preparation of the corporation minutes, both W.L. and Edith Bridges recognized and acknowledged that appellees were stockholders in Agri-Place, Inc. Testimony at trial also showed that Bridges, Sr. stated to the corporation's accountant that neither he nor Edith owned any shares in the corporation. Furthermore, Edith stated to the accountant that the appellees owned their respective number of shares in the corporation. Income tax returns were filed for the corporation, signed by Bridges, Sr. and/or Edith, acknowledging that the appellees were owners of a certain percentage of the outstanding stock of Agri-Place, Inc.

The Red Wright Farm was sold in 1973, and the corporation received in exchange a house located in Arlington, Texas, 112 acres of oil producing property in Erath County, Texas and a promissory note in the amount of $160,000.00.

In 1977, Bridges, Sr. wanted to make a gift of 2,000 shares of capital stock, out of the previously issued 20,000, to the Lions and Shriners organizations. The corporation's attorney informed Bridges, Sr. and Edith that stock transfer powers would be required from the appellees before stock could be given to these organizations. Bridges, Sr. died in 1977 and the stock transfer powers had not been obtained. Furthermore, none of the appellees were informed of Bridges, Sr. intent toward these organizations prior to his death.

In 1977, subsequent to the death of Bridges, Sr., appellee Betty Jean Mosebrook, on behalf of all appellees herein,

requested an accounting of Agri-Place, Inc., but such request was refused by Edith. Appellees also requested Edith to execute, i.e., sign, as president of Agri-Place, Inc., the stock certificates issued to them, but again she refused. Thereafter, Edith unilaterally cancelled the previously issued shares, and issued stock certificate number 23 to herself in the amount of 20,000 shares of Agri-Place, Inc. This suit resulted.

In their first point of error, appellants contend that the trial court erred in holding that the shares of stock of Agri-Place, Inc. had been issued because none of the shares were signed by the president or vice president of the corporation. They further assert that the farm in question was purchased from Edith's separate funds and thus the appellants, as devisees under her will, own the corporation and are entitled to the stock certificates.

■ It must first be pointed out that the certificate of stock is not the stock in a corporation itself, but rather, a muniment of title which is evidence of the ownership of the stock. *Yeaman v. Galveston City Co.,* 106 Tex. 389, 167 S.W. 710, 720 (Tex. 1914); *State Board of Insurance v. Southwest Gen. Ins. Co.,* 401 S.W.2d 369, 371 (Tex.Civ.App.—Austin 1966, writ ref'd n.r. e.). It is not necessary for complete ownership of stock that a certificate even be issued. *Yeaman, supra.* The rule in this area has been clearly set forth in *Greenspun v. Greenspun,* 194 S.W.2d 134 (Tex.Civ.App. —Fort Worth), *affirmed,* 145 Tex. 374, 198 S.W.2d 82 (1946). The appellate court held:

> As between transferor and transferee, it seems to be the rule that transfer of title may take place though there is no delivery of the certificates themselves, nor endorsement of them, nor transfer of them on the books of the corporation, and even though the sale be by parol. In each case the inquiry is whether the minds of transferor and transferee met, whether there was an intention that the stock should then and there be vested in the transferee, and whether there were acts in the nature of a symbolical delivery of the property. In this latter connection

it is to be remembered that the certificates of stock are not in themselves property, but are only evidence of the interest of the stockholder in the corporation. It is possible under some circumstances for one to own stock in a corporation though no certificate has been issued to him or endorsed or delivered to him, and likewise it is possible under some circumstances for title to the stock to pass without delivery of the certificate of stock or without written assignment of it.

*Greenspun,* 194 S.W.2d at 137.

■ We agree with the trial court's finding that the stock of Agri-Place, Inc. was actually issued in the present case. The intent on the part of Bridges, Sr. to cause the issuance of the stock is apparent from a review of the record. The attorney who prepared the stock certificates testified that Bridges, Sr. instructed him to issue shares of stock in Agri-Place, Inc. to the previously named individuals. The appellees testified that Bridges handed each of them their respective stock certificates informing them of their ownership in the corporation. Each shareholder, however, left their stock certificates with Bridges, Sr. because he wanted to retain possession for them. Bridges, Sr. and Edith both acknowledged and recognized the appellees as stockholders. The appellees were referred to as stockholders in the corporate minutes and also listed as such in the 1977 tax return.

The appellants urge that because the shares of stock had not been signed by the president or vice president, there could be no issuance. TEX.BUS.CORP.ACT ANN. art. 2.19 (Vernon 1980) provides:

> A. A corporation shall deliver certificates representing all shares to which shareholders are entitled; and such certificates shall be signed by the president or a vice president and either the secretary or assistant secretary or such officer or officers as the bylaws of the corporation shall prescribe, and may be sealed with the seal of the corporation or a facsimile thereof . . . .

■ Appellants' analogy to the signatures required on other documents (deeds,

promissory notes, financing statements, etc.) is unpersuasive. Those documents, unlike certificates of stock, create property rights in and of themselves, by virtue of the contractual obligations contained therein. The execution of such documents is tantamount to the preservation and enforcement of the rights and obligations created by those instruments. As previously mentioned, a stock certificate is not the actual ownership of a corporation, but merely evidence that the corporation recognizes the holder as owning an interest in that corporation. We hold that art. 2.19 does not require a signature as a condition precedent to issuance; rather, it provides the owner of such stock a right to demand that the corporation provide the signatures omitted from the certificates.

Appellants also contend in their first point of error that the person or persons who furnished the consideration for the corporation stock are the persons who own the corporation. Although there was testimony that the down payment of the principal asset, Red Wright Farm, was made from Edith's separate funds, the trial court found that it was purchased with funds from a joint bank account of Bridges, Sr. and Bridges, Jr. Appellants' first point of error is overruled.

In their second point of error, appellants argue that the trial court erred in holding that the shares of stock had been delivered as required to constitute a completed inter vivos gift. Appellees assert that the overwhelming evidence shows that both Bridges, Sr. and Edith intended to make gifts of stock in the corporation to each of the appellees, and thereafter delivered the shares of stock to the appellees. We agree.

In order to consummate a gift of corporation stock, there must be donative intent on the part of the donor, delivery to the donee, and relinquishment of dominion and control by the donor. *Carrington v. C.I.R.,* 476 F.2d 704, 708–09 (5th Cir.1973); *Ellsworth v. Ellsworth,* 151 S.W.2d 628, 632 (Tex.Civ.App.—El Paso 1941, writ ref'd). As previously noted, we find that the record more than sufficiently shows the requisite donative intent on the part of Bridges, Sr. and Edith. Appellants argue, however, that no delivery was made because the certificates remained in the possession of Bridges, Sr., and that he never relinquished his right to exercise dominion and control over the certificates. Appellants' argument fails for several reasons. As discussed in appellants' first point of error, ownership of stock may exist independently of possession of the stock certificate. *Greenspun,* 194 S.W.2d at 137. Furthermore, physical delivery of the stock certificates and possession thereof is not the only method by which a donor may make a gift of corporate stock to a donee. What will constitute delivery depends upon the nature of the corpus and the circumstances of the case. *Webb v. Webb,* 184 S.W.2d 153, 156–57 (Tex.Civ.App.—Eastland 1944, writ ref'd). Actual delivery is not always necessary; rather, where the circumstances make actual delivery impractical, delivery may be symbolical or constructive. *Webb, supra,* at 156. The controlling issue is not who had possession of the certificates, but who had actual ownership of the stock, as evidenced by all the circumstances. *See Greenspun,* 194 S.W.2d at 138.

The evidence reveals that Bridges, Sr. handed each appellee their respective stock certificates, stating that the stock belonged to them but that he would retain possession of the certificates. As previously mentioned, Bridges, Sr. and Edith treated the appellees as stockholders in Agri-Place, Inc., and acknowledged as much to several other persons. We find the evidence sufficient to prove the required delivery and overrule appellants' second point of error.

Appellants' third point of error asserts that the trial court erred in holding Bridges, Sr. had the power and authority to deliver the shares of stock to appellees because title to the farm was the separate property of Edith, and any gift thereof would constitute a fraud on her property rights.

It is well settled law in Texas that property acquired during marriage is presumed to be the community property of the spouses. TEX.FAM.CODE ANN. § 5.02 (Vernon 1975). The burden is on the party asserting otherwise to overcome the presumption by clear and satisfactory evidence. *Gaston v. Gaston,* 608 S.W.2d 332, 334 (Tex.Civ.App.—Tyler 1980, no writ).

It is disputed as to who contributed the funds for the purchase of the Red Wright Farm. Bridges, Jr. testified that the down payment for the farm came from proceeds of a joint bank account maintained by him and his father, Bridges, Sr. To sustain their burden of tracing the character of the farm, appellants rely on the statements of Edith Bridges contained in her oral deposition. Appellants argue that Edith was given a tract of land in Colorado by her father as her separate property, and that the proceeds from the sale of this property were used as the down payment on the Red Wright Farm; thus, the Red Wright Farm would also be her separate property. During her deposition, however, Edith stated that she did not remember if the money was deposited in a checking account or a savings account, nor could she remember in what bank the money was deposited. Furthermore, when the Red Wright Farm was purchased in 1949, title to the property was listed in the names of William Levi Bridges and Edith Weaver Bridges. We hold that the appellants have failed in their burden of overcoming the community property presumption.

The factors used in determining whether a gift of community property by one spouse constitutes a constructive fraud on the property rights of the other spouse include the relationship between the donor and donee, whether special circumstances tend to justify the gift, and whether community funds used for such gift are reasonably proportionate to the community assets remaining. *Redfearn v. Ford,* 579 S.W.2d 295, 297 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). In *Horlock v. Horlock,* 533 S.W.2d 52 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ dism'd), the donor made gifts of community property to his daughters from a prior marriage. The appellate court, in upholding the validity of the gifts, reasoned that the daughters were the natural objects of his bounty, the tax advantages to both spouses were substantial, and the remaining assets were sufficient to provide for the needs of the wife. *Horlock, supra,* at 55–56.

We find nearly the identical fact situation in the present case. The gifts of stock were not only made to the grandchildren of Bridges, Sr., but stock was also given to relatives of Edith. It is undisputed that the primary and motivating factor behind the incorporation of Agri-Place, Inc. and the subsequent gifts of the stock therein was Bridges' desire to avoid the possible loss of the property to the Internal Revenue Service. Although the corporation was valued at approximately $240,000.00 and undisputably comprised a substantial part of the estate of Bridges, Sr. and Edith, the total value of the estate is not apparent from the record. Furthermore, only 59 percent of the stock was given to Bridges, Sr.'s issue; the remainder went to the relatives of Edith.

Appellants rely heavily on *Land v. Marshall,* 426 S.W.2d 841 (Tex.1968) in support of their constructive fraud argument. In *Land,* the husband established an inter vivos trust and through this trust granted all of his and his wife's community property to their daughter as trustee without his wife's knowledge or consent. After the trustor's death, the widow sought to cancel the trust. The Texas Supreme Court held that the trust was wholly invalid, and that the grantor's widow was entitled to recover her undivided one-half interest in the trust property. We do not find the *Land* decision binding in the present case. That decision focused on the validity of an inter vivos trust and distinguished that situation from an inter vivos gift. Furthermore, and more importantly, the defrauded spouse in *Land* was unaware of her husband's disposition of their community property until three weeks before his death. In the present case, Edith not only knew of the gift of stock of Agri-

Place, Inc., she consented to and participated in the disposition of their community property and never once objected thereto. We hold that there was no fraud, either actual or constructive, perpetrated on Edith's property rights and uphold the inter vivos gift of their community property. Appellants' third point of error is overruled.

Appellants assert in their fourth point of error that the warranty deed from Paul J. Weaver, dated April 4, 1956, naming Edith Weaver Bridges as grantee, vested title to the farm in Edith's name as her separate property, and that the deed from Paul J. Weaver to Agri-Place, Inc., dated October 29, 1969, did not vest title to the farm in the corporation.

We have previously held that upon acquiring the farm in 1949, title was held in the names of William Levi Bridges and Edith Weaver Bridges as their community property. The question to be decided now is whether the transactions subsequent to 1949 changed the character of ownership in the farm to the separate property of Edith Bridges.

As previously noted, on April 2, 1956, Bridges, Sr. conveyed the Red Wright Farm to Edith's brother, Paul Weaver, in an effort to avoid seizure of the farm by the Internal Revenue Service. No consideration was exchanged for the property. Weaver then executed a deed to Edith W. Bridges, dated April 4, 1956, purporting to convey the farm to her as her separate property. No consideration was given by Edith to Weaver for this transfer, and the deed was not recorded until November 24, 1982. On October 28, 1969, Weaver executed a second deed naming Agri-Place, Inc. as grantee, and this deed was recorded on March 15, 1971. Weaver was issued 20,000 shares of stock in the corporation in exchange for the farm.

It has been held that mere recitals in a deed as to the separate character of property are not conclusive as to the true character of the property and may be rebutted by evidence to the contrary. *Alexander v. Alexander,* 373 S.W.2d 800, 804 (Tex.Civ.App. —Corpus Christi 1963, no writ).

Although there was no specific finding of fact as to the nature of this property, we hold that the findings of fact and conclusions of law, viewed together with the evidence presented, overwhelmingly support an implied finding that the property in question was the community property of Bridges, Sr. and Edith.

Edith made no objection at the time the farm was deeded into the corporation, nor did she object in 1973 when the farm was sold in exchange for the house in Arlington, the oil producing property in Erath County and the promissory note in the amount of $160,000.00. Title to these properties has always been held in the name of the corporation. Edith was also an officer in the corporation and, therefore, obviously aware of these transactions, but she never claimed any of the property as her separate property. Furthermore, Edith has never paid taxes on these properties in an individual capacity or filed any tax returns alleging such ownership; rather, the corporation has reported the ownership of these assets on its corporate tax returns. We hold that the community property status was not altered by the transactions discussed above. Appellants' fourth and final point of error is overruled.

The judgment is affirmed.