COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| GERALD BAKKE, INDIVIDUALLY NAD ON BEHALF OF 7800 RANCH INVESTMENT, INC., A TEXAS CLOSELY-HELD CORPORATION, | § § § | |
| | § | No. 08-11-00300-CV |
| Appellants, | § | Appeal from |
| v. | § | 352nd District Court |
| JOHN H. HARVISON, GLENDA SUE HARVISON, | § | of Tarrant County, Texas |
| JOHN D. HARVISON, 7HBF LTD., 7HBF MANAGEMENT CO., LTD, DONALD H. RAY, DONALD H. RAY, | § | (TC # 352-244033-10) |
| P.C., AND RAY & WILSON, | § | |
| Appellees. | § | |

## O P I N I O N

This is an appeal from a no evidence motion for summary judgment. Gerald Bakke, individually and on behalf of 7800 Ranch, filed suit against John H. Harvison, Glenda Sue Harvison, John D. Harvison, 7HBF Ltd., and 7HBF Management Co., Ltd. (collectively referred to as the Harvisons) and Donald H. Ray, Donald H. Ray, P.C. and Ray & Wilson (the Rays) seeking damages and equitable relief based on an alleged "scheme to misappropriate for themselves [7800's] 11,000 acre ranch and all of its valuable underlying minerals." The Harvisons filed a no evidence motion for summary judgment alleging that Bakke lacked standing

to bring suit because there was no evidence he was a shareholder of 7800 Ranch. The trial court granted the motion and this appeal follows. For the reasons that follow, we reverse and remand.

## FACTUAL BACKGROUND

### *Corporate Structure of 7800 Ranch*

7800 Ranch Investment, Inc. is a Texas closely-held corporation which owned one primary asset--an 11,000 acre ranch--until March 4, 2008 when the Ranch was sold in a foreclosure sale to 7HBF. For many years prior to this lawsuit, the only two stockholders of 7800 Ranch were Mack Ponder and 7HBF. Ponder owned 59% of the stock and 7HBF owned the remaining 41%. Although the ownership percentages were not equal, the parties agreed in writing that they would have equal voting rights. Until Ponder's death, 7800 Ranch's board of directors consisted of Ponder and John H. Harvison (Harvison Sr.). Harvison Sr. is also a limited partner of 7HBF. 7HBF's general partner is 7HBF Management Co., Ltd. which is controlled by Harvison Sr. and his son, John D. Harvison.

Over the years, Ponder and 7HBF provided funds to the Ranch as needed for maintenance, road improvements, improvements to the two small houses on the Ranch, and payment of the caretaker's salary. Ponder and 7HBF contributed toward the upkeep of the Ranch in accordance with their percentage of ownership. In other words, Ponder contributed 59% of the costs and 7HBF contributed the remaining 41%.

### *Ponder's Transfer of Stock and Ownership Interest to Bakke*

In 2003, Bakke and Ponder entered into a contract for Bakke to purchase Ponder's 59% interest (590 shares) in 7800 Ranch. The terms provided that Bakke would make monthly payments until such time as the purchase price was paid in full. Bakke would not take possession of Ponder's shares until all payments under the contract were made.

On January 14, 2004, Ponder died. After his death, his 590 shares in 7800 Ranch were transferred to the Mack Ponder Family Living Trust. On February 15, 2005, the Trust assigned the 590 shares of Ponder's stock to Bakke via a Bill of Sale and Assignment of Stock. According to Bakke, the Trust also delivered 7800 Ranch's corporate record book and authorized Bakke to document the stock transfer. Bakke then issued himself a stock certificate for 590 shares and recorded the transaction. On March 21, 2005, Harvison Sr. appointed Glenda Sue Harvison as the second director for 7800 Ranch and new bylaws were adopted. Donna Cottongame, the bookkeeper for 7HBF, then became the bookkeeper for both 7HBF and 7800 Ranch.

### 7HBF's Loan to 7800 Ranch, Demands for Payment, and Foreclosure

On July 25, 2005, 7HBF loaned 7800 Ranch $150,000. The loan transaction was evidenced by the execution of a promissory note and a deed of trust. Under the deed of trust, 7800 pledged the Ranch as security for the Note. According to the terms of the Note, the principal sum was payable on demand, or if no demand, then on January 1, 2008. The Note was signed by Harvison Sr.

In January 2006, John D. Harvison, on behalf of 7HBF, sent a demand for payment to his father, Harvison Sr., as Director of 7800 Ranch. The letter stated that 7HBF intended to foreclose on the Note if 7800 Ranch did not immediately repay in full. Bakke also received notice of 7HBF's demand for payment and intent to foreclose on the Ranch. In response, he provided Ray, the attorney for the Harvisons, a certified check for $152,500. Bakke's check fully paid the debt 7800 Ranch owed 7HBF.

Between February 2006 and March 2008, 7HBF continued to loan money to 7800 Ranch. The parties did not execute a new promissory note and/or deed of trust in connection with the

additional loans but the loans were recorded in the corporate books. As recorded, 7HBF was responsible for 41% of the debt and Bakke for the remaining 59%.

In 2008, 7HBF once again sent notice of its intent to foreclose to Bakke. On March 4, 2008, 7HBF purchased the Ranch at a public foreclosure auction. It was the only bidder and paid $200,000 for the Ranch. According to Bakke, he did not receive notice of the foreclosure sale until two days after the sale.

## PROCEDURAL BACKGROUND

Bakke, individually and on behalf of 7800 Ranch, filed suit seeking damages and equitable relief based on nine separate causes of action: (1) fraud; (2) breach of fiduciary duty and knowingly participating in a breach of fiduciary duty; (3) recision; (4) fraudulent conveyances; (5) using a fraudulent lien to cause financial damage in violation of Texas Civil Practice and Remedies Code section 12.002; (6) constructive trust; (7) violation of the Texas theft liability act; (8) conspiracy; and (9) oppression. On April 5, 2011, the Harvisons filed a traditional and no evidence motion for summary judgment seeking dismissal of all of Bakke's claims. However, as noted in the judgment, on the day of the hearing, they announced to the court that they were only seeking judgment on their claim that Bakke had no evidence he was a shareholder in 7800 Ranch. In response, Bakke submitted his own affidavit along with: (1) a bill of sale reflecting Bakke's purchase; (2) a stock certificate for 590 shares from 7800's corporate record book, purportedly prepared by Ponder's lawyer and signed by Bakke at the direction of Ponder's lawyer; (3) photocopies of Ponder's stock certificates with original endorsements showing that the shares were cancelled and transferred; (4) two demands by the Harvisons that Bakke pay his 59% share of the Ranch's debt - one in 2006 and one in 2008; (5) the $150,000 cashier's check which satisfied the 2005 Note; (6) the testimony of Harvison Sr. that he would

- 4 -

not have accepted Bakke's $150,000 cashier's check if Bakke was not a shareholder and his testimony that Bakke could have called a shareholder's meeting; and (7) the testimony of Donna Cottongame that the corporate books reflected Bakke owed 59% of the debt because he was a 59% shareholder and that his $150,000 check completely satisfied the Note. That same day Bakke also filed his objections to and motion to strike portions of the Harvisons' summary judgment evidence.

On June 10, 2011, the trial judge conducted a hearing on the motion. That morning, the Harvisons filed their objections to Bakke's affidavit. The same day, the trial court signed a summary judgment order granting the Harvisons motion on the ground that there was no evidence that Bakke was a shareholder of 7800 Ranch. Because all of Bakke's causes of action were dependent and predicated upon his status as a shareholder, the court rendered a take-nothing judgment in favor of all defendants.[1] It also sustained the Harvisons' objections to Bakke's affidavit.

On July 11, 2011, Bakke filed a motion for new trial, a motion to permit additional testimony, and a motion for reconsideration of rulings on evidentiary objections. These motions were based on documents he received from Mark Paisley ten days after summary judgment was granted.[2] All of these motions were overruled, by operation of law or otherwise.

---

[1] The Ray defendants were not joined as parties until Bakke's first amended petition was filed on May 26, 2011. As of the date of the summary judgment hearing on June 10, they had not yet answered or entered an appearance.

[2] Mark R. Paisley represented Ponder in the sale of his shares to Bakke. He sent a notification letter to Harvison Sr. on February 23, 2005:

> This letter is to notify you that the 590 shares of stock previously owned by Mack Ponder have now been sold and conveyed, through the Mack Ponder Estate and then through the Mack Ponder Family Living Trust, to Mr. Jerry Bakke. . . . A copy of the BILL OF SALE AND ASSIGNMENT OF STOCK, which evidences this transaction is attached. I understand Mr. Bakke will be contacting you about any future corporate matters.

## BAKKE'S SHAREHOLDER STATUS

In Issue One, Bakke argues that the trial court erred in granting summary judgment because he presented more than a scintilla of evidence that he is a stockholder of 7800 Ranch. We agree.

### *Standard of Review*

On appeal, we review a summary judgment de novo. *Frost National Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). In conducting our no-evidence review, we "review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009), *quoting Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)(internal quotations omitted).

A no-evidence motion for summary judgment is essentially a pretrial directed verdict. *Seidler v. Morgan*, 277 S.W.3d 549, 552 (Tex.App.--Texarkana 2009, pet. denied). Therefore, the same legal sufficiency or no-evidence standard applies. *See* TEX.R.CIV.P. 166a(i); *General Mills Restaurants, Inc.*, 12 S.W.3d 827, 832-33 (Tex.App.--Dallas 2000, no pet.); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). A trial court should grant a no-evidence motion when: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *King Ranch, Inc. v. Chapman*,

118 S.W.3d 742, 751 (Tex. 2003); *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

On appeal, we must determine whether the non-movant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See Chapman*, 118 S.W.3d at 751. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms.*, 953 S.W.2d at 711. By contrast, less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Chapman*, 118 S.W.3d at 751, *quoting Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

### *Applicable Law*

A stock certificate is some evidence of ownership in a corporation, but under Texas law, the absence of a stock certificate does not necessarily invalidate a parties' stock ownership. This is because Texas courts have held that a certificate of stock is not the stock in a corporation itself, but rather, a muniment of title which is evidence of the ownership of the stock. *See Estate of Bridges v. Mosebrook*, 662 S.W.2d 116, 120 (Tex.App.--Fort Worth 1983, writ ref'd n.r.e.), *citing Yeaman v. Galveston City Co.*, 106 Tex. 389, 167 S.W. 710, 720 (Tex. 1914); and *State Board of Insurance v. Southwest Gen. Ins. Co.*, 401 S.W.2d 369, 371 (Tex.Civ.App.--Austin 1966, writ ref'd n.r.e.). In fact, it is not necessary that a certificate even be issued for complete ownership of stock. *Mosebrook*, 662 S.W.2d at 120; *Yeaman*, 106 Tex. 389, 167 S.W. at 720; *Greenspun v. Greenspun*, 194 S.W.2d 134 (Tex.Civ.App.--Fort Worth), *affirmed*, 145 Tex. 374, 198 S.W.2d 82 (1946). In *Greenspun*, the appellate court recognized that:

> It is possible under some circumstances for one to own stock in a corporation though no certificate has been issued to him or endorsed or delivered to him, and

likewise it is possible under some circumstances for title to the stock to pass without delivery of the certificate of stock or without written assignment of it.

*Greenspun*, 194 S.W.2d at 137.

### *Evidence of Bakke's Ability to Exercise Shareholder Rights*

The undisputed evidence shows that 7800 Ranch recognized Bakke had 59% ownership interest, the same percentage that previously belonged to Ponder. 7800 Ranch accepted money from Bakke in accordance with that ownership interest and its corporate records reflect that Bakke was an owner. Not only was Bakke notified of both foreclosures, but his 2006 payment of $152,500 was accepted in payment of the Ranch's debt to prevent the initial foreclosure. There was also testimony that 7800 Ranch would not have accepted Bakke's check if he were not a shareholder.

The Harvisons' motion for summary judgment and supporting evidence contradict their claims. Donna Cottongame's affidavit indicates she was responsible for maintaining the books and records of 7HBF and 7800 Ranch. Attached to her affidavit is a copy of a cashier's check from Bakke to 7HBF in the amount of $152,500 which they identify as "reimbursement for his share of Ranch expenses prior to February 2006." Her affidavit explained:

> On February 6, 2006, Bakke delivered a cashier's check to 7HBF in the amount of $152,500, a true and correct copy of which is attached hereto as Exhibit 1. $2,500 of the payment was applied to attorney's fees, and the balance was applied to Bakke's 59% share of Ranch expenses funded by 7HBF prior to February 2006, resulting in a $20,200.00 overpayment by Bakke (credit) on the books and records of 7HBF -- to be applied to Bakke's share of future indebtedness based upon my understanding of the agreement between the parties.

The motion for summary judgment also referred to Cottongame's affidavit in the section addressing Bakke's fraud claim: "In February 2006, Bakke reimbursed 7HBF $152,500 for **his share** of Ranch expenses loaned by 7HBF to 7800." [Emphasis added]. With regard to breach of fiduciary duty, the Harvisons quoted Cottongame's affidavit to the effect that, "Bakke

reimbursed 7HBF **his full share** of the prior loans and received a credit for an overpayment."

[Emphasis added]. This is some evidence that, at least at the time of the 2006 payment, 7800 Ranch considered Bakke as the successor in interest to Ponder's shares. The amount Bakke paid, which 7800 Ranch affirmatively recognizes as "his share," is equal to 59%, the same percentage owned by Ponder.

Similar admissions are found in other portions of the motion for summary judgment. In addressing Bakke's cause of action for oppression, the motion states in relevant part:

> **Bakke was a majority shareholder** and, while **he succeeded to a voting rights agreement** which provided for equal voting between 7HBF **and Ponder (now Bakke)**, case law does not support a claim of oppression by **an equal shareholder**.

> .    .    .

> To the extent Bakke has been dissatisfied with the management or operations of 7800, **he has had available to him numerous remedies under the Agreement of Shareholders.**

[Emphasis added]. And finally, the first sentence in the conclusion of the motion for summary judgment states: "None of the events of which Bakke is complaining would have occurred but for Bakke's failure to live up to **his responsibilities as a stockholder of 7800.**" [Emphasis added]. These statements establish that 7800 Ranch treated Bakke as the successor in interest to Ponder's shares.

The crux of the Harvisons' argument focuses on Bakke's failure to produce the original stock certificates issued to Mack Ponder. They insist that Bakke must establish and produce evidence of the entire chain of stock to be considered a shareholder:

> The dispute is resolved by the fact that the original Ponder certificates have not been accounted for by Bakke and no evidence has been presented that those original Ponder certificates have been presented to 7800 for registration of transfer as required by § 8.207 of the U.C.C.

We reject this argument.

Texas law does not require possession of a stock certificate to evidence ownership in a corporation. *In re Seminole Walls & Ceilings Corp.*, 446 B.R. 572, 585-86 (M.D.Fla. 2011)(applying Texas law). While Texas has adopted Article 8 of the Uniform Commercial Code which governs the creation and transfer of corporate securities, "Article 8 does not require a stock certificate to prove ownership in a company." *Id.* In fact, "stock ownership may, and often does, exist without evidence of a certificate." *Id.* Finally, as the court noted in *In re Seminole Walls*:

> [I]n order to create a stockholder relationship, a party must show an agreement giving the shareholder the ability to exercise a shareholder's rights. Courts often imply such agreements or contracts from the parties' acts and the surrounding circumstances.

*Seminole Walls*, 446 B.R. at 586.

Bakke's failure to produce the original Ponder certificates does not, in and of itself, invalidate ownership of the stock. *See Alpha Capital Anstalt v. Ness Energy International, Inc.*, No. CIV-10-1218-D, 2012 WL 1035760, at *6 (W.D.Okla. March 28, 2012)(applying Texas law), *citing In re Estate of Crawford*, 795 S.W.2d 835, 838 (Tex.App. 1990) and TEX.BUS.&COMM. CODE § 8.102; *see also Mosebrook*, 662 S.W.2d at 120 (providing that possession of a share certificate is not essential to ownership of shares or to the exercise of shareholder's rights.). While the Harvisons may be correct that 7800 Ranch did not have a duty to recognize Bakke as the owner of the interest represented in the original Ponder stock certificates because Bakke did not ask for, and was not issued, new certificates in compliance with Article 8 of the U.C.C., it does not negate the fact that the Harvisons and 7800 Ranch did in fact treat Bakke as a shareholder. We sustain Issue One. Our resolution renders it unnecessary for us to consider Issue Two in which Bakke challenges the trial court's evidentiary rulings. We

reverse and remand for trial on the merits.


October 16, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating