COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| | | |
|---|---|---|
| MARTHA KIGHT DUTCHER, | § | |
| Appellant, | § | |
| v. | § | |
| DUTCHER-PHIPPS CRANE & RIGGING, INC., KENNETH J. DUTCHER, INDIVIDUALLY, AND IN HIS CAPACITY AS PRESIDENT OF DUTCHER-PHIPPS CRANE & RIGGING, INC., AND IN HIS CAPACITY AS SUCCESSOR TRUSTEE OF PAUL K. DUTCHER LIVING TRUST ONE, AND ROBIN L. ERWIN, INDIVIDUALLY, AND IN HER CAPACITY AS SECRETARY OF DUTCHER-PHIPPS CRANE & RIGGING, INC., | § § § § § § § | No. 08-15-00202-CV<br><br>Appeal from the<br><br>143rd Judicial District Court<br><br>of Ward County, Texas<br><br>(TC# 14-07-23394-CVW) |
| Appellees. | § | |

## **O P I N I O N**

At stake in this case is the ownership of 400 shares of common stock of a privately-held company, Dutcher-Phipps Crane & Rigging, Inc.

For many years, Dutcher-Phipps was owned equally by two family limited partnerships, The P.K. Dutcher Family Limited Partnership (hereinafter, "Dutcher FLP") and The R.C. Phipps Family Limited Partnership, each controlling 2000 shares. Dutcher FLP was formed in May

1998, when Paul K. Dutcher and two of his children, Kenneth J. Dutcher and Robin L. Erwin, transferred their Dutcher-Phipps common stock in exchange for partnership interests equal to their contributions.[1] For his 1600 shares, Paul received an 80 percent partnership interest—1 percent as general partner and 79 percent as limited partner; for his 200 shares, Kenneth received a 10 percent limited partnership interest; and for her 200 shares, Robin received a 10 percent limited partnership interest. ~~(CR 206 in TAMES (FOF #14-16, 22); RR 132 in TAMES (Martha Dutcher's testimony))~~Contemporaneously, and consistent with his estate plan, Paul executed a series of transactions affecting the ownership structure of Dutcher FLP. First, he transferred his 1 percent general partnership interest to himself as trustee of the Paul K. Dutcher Living Trust Three (hereinafter, "Trust Three"). Then, after gifting small interests from his limited partnership interest to each of his four children[2] equally, he transferred his remaining 69.38 percent limited partnership interest to himself as trustee of the Paul K. Dutcher Living Trust One (hereinafter, "Trust One"). From that day forward, Paul did not hold any partnership interest in his individual capacity.

Over the intervening years, Paul continuously gifted equal limited partnership interests to his four children. Thus, by the time Dutcher-Phipps decided to convert from a C Corporation to an S Corporation, the two living trusts' ownership interest in Dutcher FLP had decreased to 20 percent and the children's ownership interest in Dutcher FLP had increased to 80 percent.[3] Because no partnership can own shares of an S Corporation, the conversion required the transfer of

---

[1] When Dutcher-Phipps was incorporated in 1973, Paul received 2000 shares of common stock. In 1993, he gifted to Kenneth and Robin 200 shares each and retained the rest for himself. ~~(CR 206 in TAMES (FOF #11))~~

[2] Paul's four children are Kenneth, Robin, Debra L. Riley, and Melissa D. Raughton.

[3] The children's 80 percent limited partnership interest in Dutcher FLP was allocated in the following manner: (1) Kenneth, 25 percent; (2) Robin, 25 percent; (3) Debra, 15 percent; and (4) Melissa, 15 percent.

Dutcher-Phipps shares. Paul, in his capacity as general partner of Dutcher FLP, executed a document conveying the partnership's shares to each partner in an amount equal to their interests and instructing Dutcher-Phipps's Secretary to record the transfer. In the case of the two living trusts, their 20 percent interest equated to 400 shares. However, the stock certificate representing the 400 shares was not issued to Paul as trustee of the living trusts. Instead, it was made out to him individually.

Paul's surviving spouse, Martha Kight Dutcher, claimed the 400 shares passed to her as part of his residuary estate. Dutcher-Phipps, Kenneth, and Robin (collectively, "Appellees") maintained the shares passed to Paul's children as beneficiaries of Trusts One and Three. Both parties sought declaratory relief to resolve the dispute. Martha argued the stock certificate and the conveyance instrument conclusively proved that Paul owned the shares in his individual capacity when he died. Appellees, on the other hand, contended the transfer of 400 shares to Paul, individually, was void because it was the result of a mistaken belief held by third-party professionals that he had been partner in that capacity. The trial court sided with Appellees, declaring that, when Paul died, he owned the shares in his capacity as trustee.

On appeal, Martha contends the trial court erred in siding with Appellees because they failed to prove, first, that the trusts owned the shares and, second, that Paul mistakenly transferred the shares from his trusts to himself. We disagree and, therefore, affirm.

## OWNERSHIP OF SHARES

The controlling issue in this case is who owned the 400 shares represented by the stock certificate issued to Paul in December 2011. Martha is correct in asserting that Dutcher FLP did not own the 400 shares after that point. She is also correct in asserting that, from that point until

3

Paul's death in June 2013, there is no evidence that he dealt with or disposed of the 400 shares in any manner. But Martha is incorrect in asserting that, because both the stock certificate and the conveyance instrument do not identify Paul in his representative capacity, he owned the disputed shares in his individual capacity.

A stock certificate is not synonymous with actual ownership of the shares represented by the certificate; it is merely some evidence of ownership. *Bakke v. Harvison*, 417 S.W.3d 645, 650 (Tex.App.--El Paso 2013, pet. denied); *Hydroscience Tech., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 792 (Tex.App.--Dallas 2013, pet. denied). Actual ownership is determined from all the facts and circumstances of a case:

> As between transferor and transferee, it seems to be the rule that transfer of title may take place though there is no delivery of the certificates themselves, nor endorsement of them, nor transfer of them on the books of the corporation, and even though the sale be by parol. In each case the inquiry is whether the minds of transferor and transferee met, whether there was an intention that the stock should then and there be vested in the transferee, and whether there were acts in the nature of a symbolical delivery of the property. In this latter connection it is to be remembered that the certificates of stock are not in themselves property, but are only evidence of the interest of the stockholder in the corporation. It is possible under some circumstances for one to own stock in a corporation though no certificate has been issued to him or endorsed or delivered to him, and likewise it is possible under some circumstances for title to the stock to pass without delivery of the certificate of stock or without written assignment of it.

*Greenspun v. Greenspun*, 194 S.W.2d 134, 137 (Tex.Civ.App.--Fort Worth), *affirmed*, 145 Tex. 374, 198 S.W.2d 82 (1946). Thus, "establishing ownership . . . depends on the evidence presented, including the nature of the parties, the nature of their relationship, and their representations to each other." *Krainz v. Kodiak Res., Inc.*, 436 S.W.3d 325, 332-33 (Tex.App.--Austin 2013, pet. denied). The facts and circumstances in this case support the conclusion that Paul owned the 400 shares in his capacity as trustee.

4

As mentioned earlier, Paul ceased owning stock in Dutcher-Phipps in his individual capacity in 1998 when, after visiting an estate planning attorney, he created Dutcher FLP and the two living trusts, the beneficiaries of which were his four children.   In executing his estate plan, Paul transferred his Dutcher-Phipps shares to Dutcher FLP and, in exchange, received a partnership interest equal to his contribution.   Contemporaneously, Paul executed a series of transactions that altered Dutcher FLP's ownership structure significantly.   The net result was that each of his four children became limited partners and that he held his general and limited partnership interests in trust.

The trusts' ownership of Paul's interests in Dutcher FLP continued uninterrupted until 2011, when the decision was made to convert Dutcher-Phipps from a C Corporation to an S Corporation.   Significantly, at no point during the intervening years did Paul, as trustee, transfer any interest in Dutcher FLP to himself, individually, and exchange it for Dutcher-Phipps's stock.   Nor did Paul, as trustee, ever transfer any interest in Dutcher FLP to himself, individually, and keep it permanently.   Of course, Paul, as trustee, did transfer interests in Dutcher FLP to himself, individually, on those occasions when he gifted limited partnership interests to his children.   But these transfers were transitory.   After transferring the interests to himself in writing, Paul immediately transferred them to his children.   Apart from these transfers, there are no other written instruments conveying Paul's interests to himself.

The written instrument Paul executed in his capacity as general partner of Dutcher FLP unmistakably conveys the partnership's 2000 shares of Dutcher-Phipps to each partner in an amount equal to their interests.   It also clearly instructs Dutcher-Phipps's Secretary to transfer ownership of the shares in accordance with the instrument:

5

*The Partnership hereby transfers, assigns and conveys all of its shares of the Corporation to the partners of the Partnership in the amounts indicated*, and does hereby irrevocably constitute Robin L. Erwin, Secretary of the Corporation, the Partnership's attorney-in-fact *to transfer the said shares on the books of the Corporation*:

Paul K. Dutcher - 400 shares      Debra L Riley - 300 shares
Kenneth J. Dutcher - 500 shares      Melissa D. Raughton - 300 shares
Robin L. Erwin - 500 shares

This transfer is effective as of December 13, 2011, and any stock certificates issued by the Corporation shall bear such date, regardless of when such certificates are issued and signed by the officers of the Corporation. [Emphasis added].

Although Paul is identified in his individual capacity, he was not a partner in Dutcher FLP in that capacity, and Martha makes no such claim on appeal. The only capacity in which Paul was a partner in Dutcher FLP was in his capacity as Trustee of The Paul K. Dutcher Living Trust Three and Trustee of The Paul K. Dutcher Living Trust One. Therefore, we can only conclude that, despite the issuance of the stock certificate to Paul, individually, Dutcher FLP and Dutcher-Phipps intended the 400 shares in dispute to vest in Paul, as trustee.[4] *See Krainz*, 436 S.W.3d at 332-33; *Bakke*, 417 S.W.3d at 650; *Hydroscience Tech., Inc.*, 401 S.W.3d at 792; *Greenspun*, 194 S.W.2d at 137; *see also West 17th Res., LLC v. Pawelek*, no. 04-14-00668-CV, 2015 WL 9434392, at *2-3 (Tex.App.--San Antonio Dec. 23, 2015, pet. filed)(rejecting Appellants' argument that a grantor's failure to specify her capacity "as trustee" on deed nullifies the conveyance of interest held in trust and applying rules of deed construction instead to ascertain whether the grantor intended to convey that interest).

---

[4] The stock certificate was prepared by an attorney, John Carlson, based on information from a one-page spreadsheet provided to him by an accountant, Gary Davidson. Carlson described the spreadsheet as follows:

> It's just a summary of the ownership per the 2010 tax return, the gift percentages we needed to make for the Phipps family and the Dutcher family, and then the shares that were supposed to be issued and who they were going to be issued to.

Our conclusion is buttressed by two additional details pertaining to the original and the continued state of mind of the parties involved in the share transfer. First, the transactions were contemporaneous. Second, two months after receiving the stock certificate, Paul amended and restated the two living trusts. If the intent had not been to vest ownership of the 400 shares in Paul, as trustee, there would have been no need for him to amend and restate the trusts. This is because the only asset held by the trusts before the shares were transferred was a 20 percent interest in Dutcher FLP.

**STOCK CERTIFICATE**

The stock certificate Paul received was in Martha's possession when he died. Six months after Paul's death, Dutcher-Phipps issued a corrected certificate to "Paul K. Dutcher, Trustee of Paul K. Dutcher Living Trust One."[5] Martha argues the corrected certificate cannot divest her of ownership of the 400 shares because they are certificated securities over which Paul, individually, had exclusive control to dispose of as he saw fit. In advancing her argument, Martha relies on Article 8 of the Texas Uniform Commercial Code, the statutory framework governing the transfer of securities. *See* TEX.BUS.&COM.CODE ANN. §§ 8.101 *et seq*. (West 2011). Martha's reliance on Article 8 is misplaced.

First, Article 8 is not the exclusive mechanism for resolving disputes involving the ownership and transfer of securities. As established above, Texas common law permits courts to consider the intent of the parties in determining what, if any, securities were transferred. *See, e.g., Bakke*, 417 S.W.3d at 650; *Greenspun*, 194 S.W.2d at 137. The upshot is that, although Article 8 requires issuers and holders of securities to observe certain formalities when transferring securities, parties can transfer securities without observing these formalities if they clearly intend

---

[5] The share transfer records were also corrected.

7

that the transfer take place. *In re Seminole Walls & Ceilings Corp.*, 446 B.R. 572, 586 (M.D. Fla. 2011)(construing Texas law). Thus, "[c]omplete ownership of stock may exist without the issuance of a certificate or its delivery, and a shareholder can transfer shares without signing, endorsing, or delivering stock certificates, and without memorializing the transfer in the corporation's records. *Id*.

Second, even if Article 8 were the exclusive mechanism for resolving disputes involving the ownership and transfer of securities, Martha has failed to invoke its provisions. Article 8 provides that a person acquires a security if he is a purchaser to whom a security is delivered, which, in the case of a certificated security, occurs when the purchaser acquires possession of the certificate. TEX.BUS.&COM.CODE ANN. §§ 8.104(a)(1), 8.301(a)(1)(West 2011). Although Martha claims Paul, individually, was a purchaser of 400 shares of Dutcher-Phipps's stock in December 2011, he was not. "Purchaser" is statutorily defined as "a person that takes by purchase." TEX.BUS.&COM.CODE ANN. § 1.201(b)(30)(West 2009). In turn, "[p]urchase" is defined as "taking by sale, lease, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift, or any other voluntary transaction creating an interest in property." *Id.* at § 1.201(b)(29). Paul, according to Martha, was a purchaser "by issue or re-issue, or other voluntary transaction." But it is clear that, in December 2011, Dutcher-Phipps was neither "issuing" stock, *i.e.*, selling original stock, nor "re-issuing" stock, *i.e.*, selling stock it had previously bought back, to raise capital. It is equally clear that Paul was not providing anything of value for the 400 shares. And we are unclear what Martha means by "other voluntary transaction." To the extent she is arguing the corporate reorganization and resulting preparation of new stock certificates was a voluntary transaction creating an interest in the 400 shares, she is

8

mistaken. As Appellees correctly point out in their briefing, the new stock certificates "were intended to comport with pre-existing ownership interests[.]"

Martha's fourth issue is overruled.

## MUTUAL MISTAKE

Martha also contends Appellees cannot rely on the doctrine of mutual mistake to support the trial court's judgment, for three reasons. First, "[t]he trial court made no findings of mistake." Second, "[t]here is no evidence to support presumed findings or presumed findings of mistake, if any, are against the great weight and preponderance of the evidence." Third, "[t]here is no evidence . . . Paul . . . was mistaken when he executed a Transfer of Shares to himself individually." Martha's contention is based on her belief that, by alleging scrivener's error in preparing the original stock certificate, Appellees bore the burden to prove the error amounted to a mutual mistake of fact justifying reformation. A mutual mistake requires contracting parties to labor under the same misconception as to material facts. *Simpson v. Curtis*, 351 S.W.3d 374, 378-79 (Tex.App.--Tyler 2010, no pet.). Reformation corrects a mistake between the written document and the actual intent of the contracting parties. *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987).

Appellees counter they were not required to establish mutual mistake, notwithstanding their allegation of scrivener's error, because they "never asked for reformation of any instrument to make it consistent with an agreement." There was no need to reform the stock certificate or the conveyance instrument, according to Appellees, because no underlying agreement to convey the 400 shares from Paul, as Trustee, to Paul, individually, existed. We agree.

As shown by our discussion above, the evidence establishes that there was no agreement to

9

transfer the 400 shares represented by the original stock certificate to Paul, individually. By conveying the stock owned by the partnership to each partner in an amount equal to their interests and instructing Dutcher-Phipps's Secretary to transfer ownership of the shares in accordance with the conveyance instrument, the parties effectuated a transfer of ownership consistent with their nature, relationships, and representations. The parties to the agreement were all partners in a family limited partnership, the purpose of which was to transfer ownership of the family business to the next generation on a tax-free basis. Their previous interactions corroborate this understanding. So, too, does Paul's subsequent behavior in restating and amending the trusts. Based on this evidence, the trial court correctly found that Paul "never signed any document transferring the 400 shares from himself as trustee to himself individually" and that he "had no intent to transfer the stock to himself individually." Because there was no agreement to transfer the 400 shares to Paul, individually, Appellees were under no obligation, as urged by Martha, to prove "Paul made a mistake when he transferred the shares to himself, individually." Martha's first, second, and third issues are overruled.

## CONCLUSION

The trial court's judgment is affirmed.


April 13, 2016

                              YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.